**In the Matter of TARTAN CONSTRUC- TION COMPANY, Debtor.**

**Bankruptcy No. BK79–1485.**

United States Bankruptcy Court, D. Nebraska.

June 16, 1980.

James B. Gessford, Lincoln, Neb., for proposed trustee.

Mike G. Helms, Omaha, Neb., for interim trustee.

MEMORANDUM OPINION

DAVID L. CRAWFORD, Bankruptcy Judge.

This is a case of first impression involving the voting requirements for election of a trustee under Section 702 of the Bankruptcy Code. The first meeting of creditors was held on March 4, 1980. At that meeting some creditors attempted to request an election and elect a trustee. The election was disputed and, within the ten-day period prescribed by Interim Bankruptcy Rule

2003(d), a creditor applied to this Court for resolution of the dispute.[1]

The matter was heard on April 18, 1980, and attorneys for the proposed trustee, the interim trustee, and one of the creditors presented evidence. The evidence shows that votes representing claims totaling $32,848.47 were cast in favor of electing a trustee. All of those votes were then cast for the proposed trustee. Claims totaling $28,766.27 were cast against electing a trustee and against the proposed trustee.

Serious questions exist as to whether certain proxies were solicited according to the requirements of Bankruptcy Rule 208 and whether some of the claims voted were secured claims and, therefore, ineligible to be voted by the terms of Section 702(a)(1). In addition, I note that one claim was voted on both sides. However, a more fundamental question is whether, even assuming that all claims voted were legitimate, creditors holding a sufficient amount of claims requested the election of a trustee.

Section 702(b) provides that creditors eligible to vote under 702(a) and holding 20 percent in amount of claims specified by 702(a)(1) must request the election. Section 702(a) provides:

"A creditor may vote for a candidate for trustee only if such creditor—

(1) holds an allow*able*, undisputed, fixed, liquidated, unsecured claim *of a kind* entitled to distribution under section 726(a)(2), 726(a)(3), or 726(a)(4) of this title;

(2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and

(3) is not an insider." (emphasis supplied)

The provisions of Section 726 referred to by Section 702(a)(1) deal with the order of payment of unsecured claims for which a proof of claim has been filed.

The proposed trustee contends that only unsecured, nonpriority claims for which a proof of claim has been filed are to be counted in determining the base from which the 20 percent amount is computed. In support of this stance, the proposed trustee urges no creditor is entitled to distribution under Section 726(a) unless he has filed a proof of claim, and, therefore, 702(a)(1) must contemplate the filing of a proof of claim as a requirement for eligibility of a claim to be voted. The proposed trustee states that Interim Bankruptcy Rule 2003(b)(3), which requires a creditor to file a claim in order to be eligible to vote, supports his contention.[2]

As of the time of the first meeting proofs of claim on file for claims eligible to vote totaled $52,847.79. Twenty percent of that figure is $10,569.56. Even if all questionable votes are disregarded, under this theory, a sufficient amount of claims—$19,075.99— was voted in favor of electing a trustee.

However, the interim trustee contests the proof of claim requirement, stating that this creates the same situation which Section 702 was enacted to remedy, that is, potential control of an election by a very small number of creditors or their attorneys. The interim trustee suggests that the reference to Section 726(a) is merely demonstrative of the type of debt creating a claim eligible to vote and is not intended to add another eligibility requirement to those already explicitly stated in Section 702(a). In support of this argument, the interim trustee points out that the time period for filing a proof of claim extends well beyond the time of the first meeting and that no claim is nonallow*able* until that period has passed.

The interim trustee suggests several methods for determining the base amount of eligible claims. These will be considered

1. The Interim Bankruptcy Rules were adopted as the local rules of practice before this Court on November 19, 1979.

2. Although Interim Rule 2003(b)(3) governs only eligibility to vote, it affects computation of the base because Section 702(b) incorporates the eligibility requirements into the "20 percent" rule.

in more detail later in this opinion. Suffice it to say that under any of the methods proposed, the eligible claims voted in favor of an election would be insufficient.

While I am not completely convinced that a fair reading of Section 702 can justify adding the requirement of filing of proof of claim for eligibility to vote to Section 702(a), the fact that such a requirement exists in Interim Bankruptcy Rule 2003(b)(3) is troubling. I will, therefore, assume an ambiguity does exist and examine the Legislative history of the section.

Under the former Bankruptcy Act, it was assumed that creditors would elect a trustee. 11 U.S.C. § 72, Bankruptcy Act § 44. Section 44 did not suggest any procedures for the election other than that the election was to take place at the first meeting. Procedures were spelled out in Bankruptcy Rules 207 through 209. Under those rules, a trustee theoretically could have been elected by a single creditor if no other creditors appeared at the meeting and voted.

The Commission on the Bankruptcy Laws of the United States[3] was highly critical of that system. The Commission stated that the theory of creditor control was a myth in most proceedings and that the system of electing a trustee by a handful of creditors' attorneys created the possibility for serious abuses of the bankruptcy process. See Commission on the Bankruptcy Laws of the United States, H.Doc.No.93–137, 93d Cong., 1st Sess. Part I at 103–06 (1973). The Commission recommended that a trustee be elected by creditors only where creditors holding 35 percent in amount of *allowable* claims participated in the election process and a majority of those creditors voted for a given trustee. *Id.*, Part II at 183–84. In all other cases, the trustee was to be appointed by the court.

The House generally accepted the conclusions of the Commission and expanded upon them. See H.R.Rep.No.95–595, 95th Cong., 1st Sess. 91–93, 95–99 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The Committee on the Judiciary had proposed legislation identical to Section 702 in all respects material to this decision.[4] H.R. 8200, 95th Cong., 1st Sess., § 702 (1977). In commenting on the proposed legislation, the House Report stated:

"At the first meeting of creditors, creditors will continue to have the right to elect a trustee of their own choice to serve in the case, subject to certain limitations not imposed under current law. The bill permits creditor election of a trustee only in cases in which at least creditors holding 20 percent in amount of certain *scheduled* unsecured claims request election of a trustee. *The minimum percentage request requirement is designed to insure that a trustee is elected only in cases in which there is true creditor interest,* and to discourage election of a trustee by attorneys for creditors, as is so often the practice under current law. If a significant percentage of creditors does not wish to elect a trustee, it is unfair to impose the will of a few creditors' attorneys on the rest of the creditor body.

"It will be more difficult under this procedure for a trustee to be elected unless there is actual creditor interest in the case. In any case where there are significant assets, there is often creditor interest. The problems under current law occur most often in cases where the return

---

3. The Commission was formed under Pub.L. No.91–354, 84 Stat. 468 (1970). It was authorized to study the Bankruptcy Act and recommend alternatives to Congress. See Commission on the Bankruptcy Laws of the United States, H.Doc.No.93–137, 93d Cong., 1st Sess. Part I at 1–2 (1973).

4. Under H.R. 8200, Section 702(a)(2) would have read: "does not have an interest materially adverse to the interests of creditors entitled to such distribution. . . ." Section

702(a)(2) of the Bankruptcy Code provides "does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution . . . ." This modification was proposed by the Senate and adopted without change in the compromise bill. S. 2266, 95th Cong., 2d Sess. § 702(a)(2) (1978); Compromise Bill, 124 Cong.Rec. H11063 (daily ed. Sept. 28, 1978).

to creditors from the estate promises to be small. Thus, they are uninterested, and attorneys can move in to control the case. By adopting the 20 percent requirement, the bill discourages attorney control, but retains the idea of true creditor control, because the theory of creditor control remains valid."

H.R.Rep.No.95–595, *supra*, at 102–03, U.S.Code Cong. & Admin.News, p. 6063 (footnotes omitted) (emphasis added).

As Section 702 passed through the legislative process without major change or comment, this portion of the House Report provides the major source of guidance to legislative intent. The report clearly indicates that all creditors, rather than only creditors who have filed proofs of claim, are to be counted. First, the House explicitly wished to limit election of trustees to cases in which there was genuine interest shown by all creditors. Second, the reference in the report to "scheduled" claims implies an assumption that all creditors are to be counted.[5]

■ This Court will not adopt a construction of Section 702 which will frustrate the purpose of the statute. The interpretation urged by the proposed trustee would do that, in that it would limit the measure of genuine creditor interest to a percentage of the pool of those creditors interested enough to file a proof of claim. Under this interpretation, creditors could always elect a trustee and it would again theoretically be possible for one creditor or his attorney to elect a trustee. Interim Bankruptcy Rule 2003(b)(2) is inconsistent with the Bankruptcy Code and is overruled. See 11

U.S.C. § 410. A creditor who meets the requirements of Section 702(a) of the Bankruptcy Code need not file a proof of claim to be eligible to vote.

■ The interim trustee has proposed three alternatives for determining the amount of unsecured claims for purposes of an election. The first method, which has the virtue of simplicity, would take 20 percent of claims listed as unsecured on the debtor's schedule and allow only claims listed as unsecured to be voted. The problem with this is that most, if not all, of the creditors listed as secured are undersecured, as is common by the time a business files bankruptcy proceedings. In this case, two of the creditors who voted for the proposed trustee were listed as secured, voted the unsecured portion of their claims, and would be barred from voting at all if the first method is adopted. As the intent of Congress was to allow all allowable, unsecured claims to be voted, the first method is rejected.

■ The second method attempts to resolve the problem of undersecured claims by examining each claim listed as secured to determine whether some portion of that claim is unsecured. Under this method, a proof of claim or other evidence of the actual value of security for each claim would be required. The problem with this approach is illustrated by the fact that the interim trustee offered evidence for only a few of the multitude of claims scheduled as secured. It is highly undesirable and unworkable to turn every trustee election into a full-scale trial, and this method is also rejected.

---

5. Collier comments on the problem as follows:
   "The election of a trustee at the meeting of creditors will usually occur well before any claiming period has occurred. Thus it will be difficult to know whether a creditor is entitled to distribution under §§ 726(a)(2) or 726(a)(3) or not at all, if no claim has yet been filed. Therefore, either only those who have filed claims as of the time of the election are entitled to vote, or all who have allowable nonpriority unsecured claims are entitled to vote. Under the first alternative the inclusion of § 726(a) would be superfluous and unnecessary. Under the second po-

sition, *which would appear to be in conformity with the language of the legislative history* to section 702; the inclusion of the language in section 702 'of a kind entitled to distribution under section 726(a)(2), 726(a)(3), or 726(a)(4)', was a means of saying 'nonpriority', 'unsecured' and 'allowable'. The latter two concepts are already included in section 702(a)(1) but 'nonpriority' is not; although it is stated in the legislative history."
4 Collier on Bankruptcy, para. 702.01 n. 1 at 702–2 to 702–3 (15th ed. 1978) (emphasis added).

The third method, though less than perfect, seems the most manageable. Under this method, the unsecured portion of claims listed as secured would be determined by subtracting the scheduled value of the secured property from the scheduled secured claims. To this figure would be added the scheduled, nonpriority unsecured claims. In the case at hand, the figures would be:

| | |
|---|---|
| Scheduled secured claims | $2,504,074.11 |
| Less: scheduled value of secured property | 2,125,064.00 |
| Unsecured portion of secured claims | 379,010.11 |
| Add: scheduled nonpriority unsecured claims | 87,939.74 |
| Total unsecured claims as determined from schedules | 466,949.85 |
| x 20% | $ 93,389.97 |

As the claims voted in favor of electing a trustee totaled $32,848.47, there were insufficient votes under the third method to request an election.

The third method allows undersecured claims to be voted without giving undersecured creditors who choose to vote an undue advantage. If the claims of voting undersecured creditors are to be counted, then some reference must be made to the total structure of undersecured creditors. In some cases, valuation of the secured property will be a problem, but that issue has not been raised here and may be reserved for future consideration.

Since an insufficient amount of claims was voted in favor of electing a trustee, it is unnecessary to determine the validity of claims which were voted.

A separate order is entered in accordance with the foregoing.