**In re LAKE STATES COMMODITIES, INC., Debtor.**

**In re Thomas W. COLLINS, Debtor.**

**Bankruptcy Nos. 94 B 12123, 94 B 12125.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 7, 1994.

Michael K. Desmond, U.S. Trustee's Office, Chicago, IL.

Lawrence Fisher, Gardner, Carton & Douglas, Chicago, IL, Prospective Trustee.

Louis W. Levit, Ross & Hardies, Chicago, IL, for trustee, William A. Brandt, Jr.

Keevan D. Morgan, Keevan D. Morgan, Ltd., Chicago, IL, for Moving Creditors for New Trustee.

## MEMORANDUM OPINION

SUSAN PIERSON SONDERBY, Bankruptcy Judge.

### FACTS

This matter centers around the dispute in the election of a permanent Chapter 7 trustee. Two involuntary petitions for relief under Chapter 7 of the Bankruptcy Code were filed against Thomas W. Collins ("Collins") and Lake States Commodities, Inc. ("Lake States") (collectively referred to as the "Debtors") on June 16, 1994. On June 21, 1994, the Court ordered the appointment of a trustee. William A. Brandt, Jr. ("Brandt") was appointed as interim trustee by the United States Trustee ("U.S. Trustee"). On July 13, 1994, the Court entered an order for

relief in both cases. The cases are being jointly administered. No schedules or statements of financial affairs have been filed by the Debtors or on behalf of the Debtors.

On August 22, 1994, a meeting of creditors pursuant to Section 341 of the Bankruptcy Code [1] was held for the Debtors (hereinafter "First Meeting"). At the First Meeting, three creditors requested a trustee election, and nominated Lawrence Fisher ("Fisher") to serve as a trustee in both cases. The U.S. Trustee presided over the meeting pursuant to Fed.R.Bankr.P. 2003(b)(1). Creditors present at the First Meeting voted on the questions of (1) whether they wanted an election and (2) their candidate choice if such an election were held. On August 26, 1994, Bill Demakis, George Demakis, and certain other creditors ("Moving Creditors") filed a motion to resolve the disputed election pursuant to Fed.R.Bankr.P. 2003(d). On August 30, 1994, a continued first meeting of creditors was held at the United States Trustee's Office ("Continued Meeting"). Again, the U.S. Trustee tabulated the vote of those who requested an election, and their candidate choice if such election were held. At the Continued Meeting, several creditors objected to the Continued Meeting for purposes of accepting additional votes.

On September 16, 1994, the U.S. Trustee filed a Report of Disputed Election which tabulated the votes in both bankruptcy cases of the Debtors. On September 26, 1994, the Moving Creditors, Fisher, and Brandt filed responses to the U.S. Trustee's Report. On September 29, 1994, at a hearing before the Court, the accountants for the Trustee, Peat Marwick (the "Accountants") made an oral report to the Court detailing their preliminary investigation into the accounts and records of the Debtors. After making a preliminary review of the records, the Accountants compiled a list of all of the investors shown on the Debtors' records. Not all of these alleged investors filed proofs of claim. The Accountants presented to the parties and to the Court, the amount of each known investor's claim based on the account balance of those investors based solely on net deposits and withdrawals ("Net Cash Position"). Further, the Accountants detailed each investor's claim based on the statement balance reported on individual investors' statements as of April 30, 1994 ("Statement Value"). These tables were filed as Exhibits II and IV to the Accountants' report filed with the Court on October 14, 1994. That report detailed their preliminary investigation into the accounts and records of the Debtors. The Accountants survey of the Debtors' records is not complete. Also on October 14, 1994, the U.S. Trustee filed a supplemental report of the disputed election, as well as a response to the motion to resolve the disputed election. Also on that date, Brandt, Fisher, and the Moving Creditors all filed briefs in support of their respective positions.

## DISCUSSION

Section 702 [2] of the Bankruptcy Code and Rule 2003 of the Federal Rules of Bankrupt-

---

**1.** All statutory references are to 11 U.S.C. §§ 101–1330.

**2.** Section 702 states:

(a) A creditor may vote for a candidate for trustee only if such creditor—

(1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;

(2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and

(3) is not an insider.

(b) At the meeting of creditors held under section 341 of this title, creditors may elect one person to serve as trustee in the case if election of a trustee is requested by creditors that may vote under subsection (a) of this section, and that hold at least 20 percent in amount of the claims specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section.

(c) A candidate for trustee is elected trustee if—

(1) creditors holding at least 20 percent in amount of the claims of a kind specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section vote; and

(2) such candidate receives the votes of creditors holding a majority in amount of claims specified in subsection (a)(1) of this section that are held by creditors that vote for a trustee.

cy Procedure[3] provide the framework for electing a permanent trustee in Chapter 7 cases. Pursuant to Section 702(a), creditors are eligible to vote only if the creditor:

(1) holds an allowable, undisputed, fixed, liquidated unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i);

(2) does not have an interest materially adverse to the interest of creditors entitled to such distribution; and

(3) is not an insider.

11 U.S.C. § 702(a)(1)–(3).

(d) If a trustee is not elected under this section, then the interim trustee shall serve as trustee in the case.

**3.** Rule 2003. Meeting of Creditors or Equity Security Holders

(a) DATE AND PLACE. In a chapter 7 liquidation or a chapter 11 reorganization case, the United States trustee shall call a meeting of creditors to be held no fewer than 20 and no more than 40 days after the order for relief. In a chapter 12 family farmer debt adjustment case, the United States trustee shall call a meeting of creditors to be held no fewer than 20 and no more than 35 days after the order for relief. In a chapter 13 individual's debt adjustment case, the United States trustee shall call a meeting of creditors to be held no fewer than 20 and no more than 50 days after the order for relief. If there is an appeal from or a motion to vacate the order for relief, or if there is a motion to dismiss the case, the United States trustee may set a later date for the meeting. The meeting may be held at a regular place for holding court or at any other place designated by the United States trustee within the district convenient for the parties in interest. If the United States trustee designates a place for the meeting which is not regularly staffed by the United States trustee or an assistant who may preside at the meeting, the meeting may be held not more than 60 days after the order for relief.

(b) ORDER OF MEETING.

(1) Meeting of Creditors. The United States trustee shall preside at the meeting of creditors. The business of the meeting shall include the examination of the debtor under oath and, in a chapter 7 liquidation case, may include the election of a trustee or of a creditors' committee. The presiding officer shall have the authority to administer oaths.

(2) Meeting of Equity Security Holders. If the United States trustee convenes a meeting of equity security holders pursuant to § 341(b) of the Code, the United States trustee shall fix a date for the meeting and shall preside.

(3) Right to Vote. In a chapter 7 liquidation case, a creditor is entitled to vote at a meeting if, at or before the meeting, the creditor has filed a proof of claim or a writing setting forth facts evidencing a right to vote pursuant to § 702(a) of the Code unless objection is made to the claim or the proof of claim is insufficient on its face. A creditor of a partnership may file a proof of claim or writing evidencing a right to vote for the trustee for the estate of a general partner notwithstanding that a trustee for the estate of the partnership has previously qualified. In the event of an objection to the amount or allowability of a claim for the purpose of voting, unless the court orders otherwise, the United States trustee shall tabulate the votes for each alternative presented by the dispute and, if resolution of such dispute is necessary to determine the result of the election, the tabulations for each alternative shall be reported to the court. ·

(c) RECORD OF MEETING. Any examination under oath at the meeting of creditors held pursuant to § 341(a) of the Code shall be recorded verbatim by the United States trustee using electronic sound recording equipment or other means of recording, and such record shall be preserved by the United States trustee and available for public access until two years after the conclusion of the meeting of creditors. Upon request of any entity, the United States trustee shall certify and provide a copy or transcript of such recording at the entity's expense.

(d) REPORT TO THE COURT. The presiding officer shall transmit to the court the name and address of any person elected trustee or entity elected a member of a creditors' committee. If an election is disputed, the presiding officer shall promptly inform the court in writing that a dispute exists. Pending disposition by the court of a disputed election for the trustee, the interim trustee shall continue in office. If no motion for the resolution of such election dispute is made to the court within 10 days after the date of the creditors' meeting, the interim trustee shall serve as trustee in the case.

(e) ADJOURNMENT. The meeting may be adjourned from time to time by announcement at the meeting of the adjourned date and time without further written notice.

(f) SPECIAL MEETINGS. The United States trustee may call a special meeting of creditors on request of a party in interest or on the United States trustee's own initiative.

(g) FINAL MEETING. If the United States trustee calls a final meeting of creditors in a case in which the net proceeds realized exceed $1,500, the clerk shall mail a summary of the trustee's final account to the creditors with a notice of the meeting, together with a statement of the amount of the claims allowed. The trustee shall attend the final meeting and shall, if requested, report on the administration of the estate.

■ To elect a trustee it is required that creditors holding at least 20% in amount of the type of claims referred to in 11 U.S.C. § 702(a) first request that an election be held; then the creditors holding at least 20% in amount of such claims actually vote; and finally that the candidate for trustee receive a majority of the amount of votes actually cast. *Matter of Blanchard Management Corp.*, 10 B.R. 186, 187–88 (Bankr.S.D.N.Y. 1981); *In re Baton Rouge Marine Repair & Drydock, Inc.*, 57 B.R. 19, 21–22 (Bankr. M.D.La.1985). This percentage requirement was enacted "to insure that a trustee is elected only in cases in which there is true creditor interest, and to discourage election of a trustee by attorneys for creditors." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 102 (1977).

The Court turns to the issue of the appropriate reference to use in order to determine the base of eligible claims by which the Court measures whether the 20% test has been satisfied. Initially, the Court notes that aside from the oral claims voted which will be addressed separately, no party has alleged that any specific creditor should be disqualified because the creditor holds an interest materially adverse to the other creditors i.e. Section 702(a)(2), or was an insider i.e. Section 702(a)(3). Further, no facts have been alleged which could deduce such a finding. Therefore, the Court finds that no claims are disqualified for voting purposes because the claimants are insiders, or hold interests materially adverse to other creditors.

■ The Moving Creditors contend that in order to be included in the base of eligible claims to vote, a creditor must file a proof of claim or other writing evidencing a right to vote pursuant to Section 702. The Court agrees. This is apparent from the plain language of the Bankruptcy Code and Rules. Section 702(a)(1) states that a creditor is eligible to vote who is entitled to distribution under Sections 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h) or 766(i). All of these quoted sections of the Bankruptcy Code refer to distributions which would be made pursuant to a filed proof of claim.

More importantly, Section 702 states a creditor must hold a claim which is "allow-able". A prerequisite to the allowability of a claim is the filing of a written proof of claim. *See* 11 U.S.C. § 502; Robert E. Ginsberg, *Bankruptcy: Text, Statutes, Rules,* § 10.08[c], p. 10–55 (1992). Section 702 does not specifically require the filing of a proof of claim in order to be eligible to vote. However, Fed.R.Bankr.P. 2003(b)(3) does. In order for a creditor to be "entitled to vote" a proof of claim or a writing setting forth facts evidencing a right to vote pursuant to Section 702(a) must be filed *at or before* the Section 341 meeting. Fed.R.Bankr.P. 2003(b)(3). Further, as the rule clearly indicates oral claims are not eligible to vote. Therefore, the Court agrees with the line of cases which look to the proofs of claims on file as of the date of the Section 341 meeting to determine the base of eligible claims. *In re I.J.F., Inc.*, 1 C.B.C.2d 907 (Bankr.S.D.Fla.1980); *In re Saul Foos*, 93 B 25069 (February 16, 1994, oral ruling); *see Baton Rouge*, 57 B.R. 19.

■ The Court notes that a few courts have found Fed.R.Bankr.P. 2003 inconsistent with Section 702. *Matter of Tartan Construction Co.*, 4 B.R. 655 (Bankr.D.Neb. 1980); *see also In re Klein*, 119 B.R. 971 (N.D.Ill.1990). Since the Bankruptcy Code and Rules should be read in harmony whenever possible, the Court does not find a conflict. Further, since Fed.R.Bankr.P. 2003 is specifically designed to effectuate the procedure in a trustee election, the Court will not read the Bankruptcy Rules inconsistently with the Code. As the name implies, the Federal Rule of Bankruptcy Procedure governs the procedure in cases under the Bankruptcy Code. Adhering to the proper procedure is essential in any election.

■ Next, the Court turns to the issue of the amount which should be used to calculate the base of eligible claims. The Court finds that the amount listed on the face of the proofs of claim should govern. Pursuant to Section 502, a proof of claim and consequently the amount listed on the face of the claim is deemed allowed unless a party in interest objects. Fed.R.Bankr.P. 2003(b)(3) provides that a creditor may vote if a proof of claim or other writing is filed prior to or at the meeting of creditors unless:

objection is made to the claim or the proof of claim is insufficient on its face ... In the event of an objection to the amount or allowability of a claim for the purpose of voting, unless the court orders otherwise, the United States trustee shall tabulate the votes for each alternative presented by the dispute.

Section 502 and Fed.R.Bankr.P. 2003(b)(3) presume the allowance of the amount on the proofs of claim on file as of the date of the Section 341 meeting for voting purposes.

> [This] presumption is overcome if there is an objection to the claim or the claim is insufficient on its face ... The burden of establishing the invalidity of the claim for this purpose is on the objector.

4 *Collier on Bankruptcy,* ¶ 702.01, p. 702–8 (15th Ed.1994) (citations omitted). Further, any objections must be made at the time the vote is taken. *Id.; In re Autocue Sales & Distributing Corp.,* 148 F.Supp. 685 (S.D.N.Y.1957); *Curtis Candy Co. v. Brent,* 16 F.2d 119 (6th Cir.1926); *see also In re Poage,* 92 B.R. 659, 662 (Bankr.N.D.Tex. 1988) (Court resolved dispute of insufficiency of claims based on trustee's objection at the time of the election). The Court would be undermining the rule and the election process, if the Court allowed parties to object after tabulating the results and determining the outcome. Requiring parties in interest to object promptly encourages the interim trustee, the proposed trustee, or the moving creditors not to strategically object to certain claims because that claim was not voted in their favor.[4]

■ The next issue to address is whether any party in interest properly objected to the claims on file as of the date of the Section 341 meeting. In other words, due to an objection being filed were any claims deemed not allowable. In his response to the U.S. Trustee's Report, Brandt contends that none of the claims are allowable, undisputed, fixed, or liquidated. Since this objection was not made until after both the First Meeting and Continued Meeting, it is waived. Even if this were not the case, no individual objections to each proof of claim were filed by Brandt, nor were claims individually objected to in his response to the U.S. Trustee's Report. Brandt's objection in his response is a mere general objection to a claim, which will not justify disallowance of a claim. 4 *Collier on Bankruptcy,* ¶ 702.01, p. 702–11 (15th Ed.1994) (discussing cases therein).

In reference to the U.S. Trustee's Report, and utilizing the base of eligible claims as the amount of the proofs of claims on file as of the date of the First Meeting, excluding oral claims, the base amount of claims in the Lake States case was $71,695,190. Therefore, at least 20% of those claims, or claims in the amount of $14,339,038, must have requested an election. According to the U.S. Trustee's Report, $38,112,718 in claims requested an election or 53.16% of the base of eligible claims. Therefore, because at least 20% of the creditors holding eligible unsecured claims requested an election, the Court finds the election was properly requested in the Lake States Commodities case.

Utilizing the same formula in the Thomas Collins case, the base of eligible claims is $68,311,460. At least 20% of those claims, or claims in the amount of $13,662,292, must have requested an election. The amount which actually requested claims was $46,759,-428, or 68.45% of the base of eligible claims. Therefore, because at least 20% of the creditors holding eligible unsecured claims re-

---

**4.** Further, the Court's finding is supported by the amendments to the Fed.R.Bankr.P. 2003. Prior to the 1991 amendment of Fed.R.Bankr.P. 2003, if a dispute arose, the creditors meeting was adjourned until the objection or dispute was resolved. *See* Fed.R.Bankr.P. 2003 advisory committee's note (1983). Fed.R.Bankr.P. 2003 was amended in 1991 to provide that "in the event of an objection to the amount or allowability of claim for the purposes of voting" the U.S. Trustee must tabulate each alternative to any objection raised at the Section 341 meeting. This change was made "for purposes of expediency".

*See* Fed.R.Bankr.P. 2003 advisory committee's note (1991). Therefore, Fed.R.Bankr.P. 2003 contemplates objections will be made at the Section 341 meeting. Pursuant to the amendment to Fed.R.Bankr.P. 2003, after the dispute is resolved by the Court, there is no need to hold another Section 341 meeting. According to the plain language and the purpose of the rule, in order to ensure a quick resolution of the election process, the parties in interest must object to the claims for purposes of voting at the time of the Section 341 meeting.

quested an election, the Court finds the election was properly requested in the Thomas Collins case.

As stated previously, creditors who hold 20% of the eligible claims must actually vote. 11 U.S.C. § 702(c)(1). The requirements in Section 702(b) and (c)(1) are separate and distinct requirements. However, since the Court has determined that the 20% test set forth in § 702(b) has been satisfied, the requirements of Section 702(c)(1) are satisfied because all creditors who requested the election at the First Meeting actually voted in the election.[5] Therefore, at least 20% of the creditors holding eligible claims actually voted in the Lake States and Collins cases. Turning to which party received the majority of votes, the Court finds that the majority of votes cast were received by Fisher in both the Lake States case and the Collins case.

Since the outcome of the Trustee election does not change if the Court includes in the base of eligible claims those claims filed by questionable proxies, the claims presented at the Continued Meeting, or the claims allegedly presented but not filed at the First Meeting, the Court will not address these issues. Therefore, the Court finds that Lawrence Fisher is the duly elected trustee in the Lake States Commodities and Thomas Collins bankruptcy cases.

■ The Court will address the remaining arguments of the parties. Brandt argues that the reference to Section 726 in Section 702 should be taken one step further. Specifically, Brandt argues that since Section 726 refers to claims entitled to distribution which includes tardily filed claims, the Court must look to the proofs of claim on file as of the bar date, or thereafter to compute the base of eligible claims. This Court will not construe Section 702 so broadly. Section 726(a)(2)(C) of the Bankruptcy Code specifically allows a creditor with a late filed claim to participate in a distribution when two requirements are met. First, the creditor must not have actual knowledge or notice of the case in order to file a timely proof of claim, and second, the claims must have been filed prior to distribution. *In re Coastal*

*Alaska Lines, Inc.*, 920 F.2d 1428, 1433 (9th Cir.1990). If the Court computed the claims base by the claims tardily filed, then the Court would have to essentially wait until the assets of the estate were distributed. 11 U.S.C. § 726(a)(2)(C). In effect, then a different trustee could never be elected. Congress certainly did not intend to eliminate the right to elect a trustee by inserting that language in Section 702.

The U.S. Trustee contends that the Court should determine the base of eligible claims from the total amount of all investor claims as computed from the Debtors' records. According to the U.S. Trustee, the Debtors' records are the closest replication of the scheduled debts, which some courts look to calculate the base of eligible claims. *See Matter of Lindell Drop Forge Co.*, 111 B.R. 137 (Bankr.W.D.Mich.1990); *Poage*, 92 B.R. 659. There are two problems with this analysis. First, the U.S. Trustee is seeking to add claims to the base of eligible claims in which a proof of claim was not filed. If this were permitted, the term "allowable" in Section 702 would be rendered meaningless. Second, one of the central problems in this case is the state of the records of the Debtors. By the preliminary statements of the Accountants who have inspected the books and records of the Debtors, they are incomplete. No party has requested an evidentiary hearing, aside from the U.S. Trustee in the event the Court found that the base of eligible claims was the total amount of investor claims. The Court did not make such a determination. All the parties agreed to a quick decision by this Court in order to enable a swift resolution of the election. If time were given to clarify pending issues, the Court may not be any closer to a resolution, and would in effect be deciding that Brandt is the permanent trustee by virtue of his continuance as the interim trustee. The Court must promote the "the desire to immediately get a trustee to [sic] administer an estate before the proceeds and assets were dissipated while the Bankruptcy Judges litigated disputes over who got elected." *Mat-*

---

**5.** The Court notes that one voter requested an election in both bankruptcy cases, but deferred his vote until the Continued Meeting. However, this does not change the election results.

*ter of A & J Elastic Mills, Inc.*, 34 B.R. 977, 979 (S.D.N.Y.1983).

Moreover, although some courts may rely on the debtor's schedules to compute the base of eligible claims, there is nothing in Section 702 or the Bankruptcy Code to indicate that the schedules are more accurate than the proofs of claim. In fact, what the debtor lists on the schedules in a Chapter 7 case is implicitly considered less reliable by the Bankruptcy Code. Generally in a Chapter 7 case, if a debt is listed on the debtor's schedules, and no proof of claim is filed, the claimant will not share in the distribution. 11 U.S.C. § 726. However in a Chapter 7 case, once a proof of claim is filed it is automatically allowed, unless an objection is filed. 11 U.S.C. § 502.

The U.S. Trustee and Brandt contend that the amount of the total investor claims in the case should be calculated by utilizing the Net Cash Position. If the Court were to accept this method, even if it were simply for the proofs of claim on file as of the date of the First Meeting, then substantially all of the proofs of claim would be rendered disputed. Therefore, none of those claims would be eligible to vote. Such a result would defeat the goal of creditor control in a Chapter 7 proceeding, and "such literalism in the case at hand would lead us to a result that does not fit into the scheme of the bankruptcy code and rules." *In re Cohoes Indus. Terminal, Inc.*, 90 B.R. 67, 69 (S.D.N.Y.1988). Furthermore, even if the Court utilized the Net Cash Position method for the proofs of claim on file as of the date of the First Meeting, the preliminary report from the Accountants indicate Lawrence Fisher would be elected trustee.

Lastly, Brandt contends that the election was a "surprise" and taking his argument to its logical conclusion was therefore inequitable. The possibility of creditors electing a permanent trustee, and the interim trustee not serving as permanent trustee, was a situation Congress clearly contemplated by the enactment of Section 702. That possibility also should have been contemplated by Brandt.

The Court notes that no party advocates utilizing the value on the investors' statements as of April 30, 1994, or the Statement Value, as the base of eligible claims. Therefore, the Court will not address this approach.

The Court's reasoning in this case is in line with Judge Ronald Barliant's recent decision in the case *In re Saul Foos*, 93 B 25069. In an oral ruling on February 16, 1994, Judge Barliant clearly held that the base of eligible claims were measured by the claims on file as of the date of the Section 341 meeting. Although there was an alternative holding in that decision, that does not detract from the court's central holding that the proofs of claim on file as of the date of the Section 341 meeting should be calculated by the base of eligible claims. Furthermore, the Court recognizes that the holding in *In re Saul Foos*, enabled the proposed trustee, William A. Brandt, Jr., to become elected the permanent trustee. Ironically, Brandt is advocating a different method for calculating the base of eligible claim in this case. In summary, the Court finds that the Bankruptcy Code and Rules clearly contemplate that the amount of the proofs of claim on file as of the date of the Section 341 meeting shall be calculated to determine the base of eligible claims.

Aside from comporting with the plain language of the Bankruptcy Code and Rules, the Court's decision is supported by an important policy concern behind the trustee election process. The Court's decision ensures that creditors who are truly interested in the election of a trustee are represented. In this case, the creditors who filed proofs of claim, appeared at the Section 341 meeting, and participated in the Section 341 meeting, satisfied the 20% requirement in Section 702(a). These creditors had a choice whether to request the election. Some claimants voted "yes" to request the election, others voted "no". This is the type of creditor participation that Congress was seeking to enhance with the enactment of Section 702 and to ensure creditor control of the election process. *Poage*, 92 B.R. at 662.

## CONCLUSION

The Court recognizes that " 'the record does not provide a model of proper proce-

dure.'" *In re Oxborrow*, 913 F.2d 751, 754 (9th Cir.1990) *citing Manhattan Shirt Co. v. Tomlinson*, 327 F.2d 449, 452 (9th Cir.1964). However, in order to not delay the administration of the estate, the resolution of the election of the Trustee should be swift. "It is highly undesirable and unworkable to turn every trustee election into a full-scale trial." *Tartan Construction*, 4 B.R. at 658. In adopting a mode of election in the Bankruptcy Code, Congress sought to eliminate the "squabbling" in the election of a trustee, or more aptly who will be the trustee's attorney. *In re Nat. Sugar Refining Co.*, 39 B.R. 578, 579 (Bankr.S.D.N.Y.1984).

According to the election results as tabulated by the U.S. Trustee, Fisher received the majority of votes in both Lake States and Collins bankruptcy cases, and he is the duly elected trustee in both cases. The Court's opinion does not bar parties in interest from objecting to the claims of any creditors later in this case, for purposes other than voting.