**In re SAN DIEGO SYMPHONY ORCHESTRA ASSOCIATION, Debtor.**

**Bankruptcy No. 96–07490–A7.**

United States Bankruptcy Court, S.D. California.

Oct. 8, 1996.

Margaret M. Mann, Luce, Forward, Hamilton & Scripps, San Diego, CA, for Debtor.

David L. Osias, Loraine L. Pedowitz, Allen, Matkins, Leck, Gamble & Mallory, San Diego, CA, for Richard M. Kipperman, Interim Trustee.

Theodore W. Graham, Jeffrey K. Garfinkle, Brobeck, Phleger & Harrison, San Diego, CA, for Unsecured Creditors/Musicians.

James P. Hill, Sullivan, Hill, Lewin & Markham, San Diego, CA, for Ashton F. Pitts, Jr.

## MEMORANDUM DECISION

PETER W. BOWIE, Bankruptcy Judge.

By prior separate Order, the Court held that the Musicians' motion to resolve the

disputed election of a permanent Chapter 7 trustee in this case was timely filed. The Court also ruled that the 1991 amendment to Rule 2003(b), expressly deleting the provision authorizing a court to temporarily allow claims for purposes of voting in such an election, deprived the Court of authority to temporarily allow claims as the Musicians had requested. The Court then asked for supplemental briefs centering on the effect of the objections to the Musicians' proofs of claims on their ability to vote some or all of those claims in the trustee election. The Court has reviewed the supplemental pleadings and the cited authorities.

The interim trustee filed objections to the proofs of claims filed by almost all of the Musicians. The objections were the same, and asserted that 1) the portion of the claim which sought future wages beyond the Symphony's cessation of business was not allowable; 2) even if future wages were allowable, each claiming musician had a duty to mitigate those damages; 3) each claiming musician also had a duty to mitigate his or her prepetition wage claim; 4) the priority portion of many claimants was overstated by asserting the maximum of $4,000; and 5) each claim must be denied as long as the musicians retained a preferential security interest in the Symphony library, and preferential payments of antecedent wages made within 90 days of the filing, pursuant to 11 U.S.C. § 502(d). The claim objections were supported by a short declaration of Mr. Kipperman with an attached copy of a letter from the Union representative to the Symphony president discussing how certain payments the Symphony was to make to the Musicians were to be attributed.

■ The relevant statutory provision is 11 U.S.C. § 702(a), which provides:

(a) A creditor may vote for a candidate for trustee only if such creditor—

(1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;

(2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and

(3) is not an insider.

In order for an election to be conducted, at least 20% in amount of the claims in (a)(1) must request the election. If at least 20% do request the election, at least 20% of the amount of the claims in (a)(1) must actually vote. If that second threshold is crossed, then the candidate who receives a majority of the amount of the (a)(1) claims actually voted is elected the trustee. *In re Michelex, Ltd.*, 195 B.R. 993, 998–99 (Bankr.W.D.Mich.1996).

As the statute makes clear, in order to vote, a creditor must hold "an allowable, undisputed, fixed, liquidated, unsecured claim". In the present case, the interim trustee filed objections to virtually all of the claims filed by the Musicians. If by virtue of the filed claims objections those claims are "disputed" within the meaning of § 702(a)(1), then they cannot vote, nor can they be counted in any request for an election. That is the crux of the issue before the Court, and is the focus of the supplemental pleadings.

■ The Musicians raise the concern that a party in interest might be able to disenfranchise certain creditors by filing objections to their proofs of claim, even if the objections have no merit. Accordingly, the Musicians continue to press their argument that the Court has continuing authority to temporarily allow their claims for purposes of voting notwithstanding the express withdrawal of that authority by the 1991 amendment to Rule 2003(b). The Court disagrees, as already discussed in the separate Order. As also discussed in that Order, the prior version of Rule 2003(b), which purported to authorize the Court to temporarily allow claims, may well have been inconsistent with and in derogation of the controlling statute, § 702(a)(1). Temporary allowance of a claim presupposes that the claim is disputed in some manner, whether it is not fixed as to

liability, or not liquidated in amount. Yet § 702 provides that only undisputed, fixed, liquidated claims may vote. The statute does not authorize temporary allowance of otherwise disputed claims, although the Congress has demonstrated it knows how to provide for such temporary allowance if it chooses. 11 U.S.C. § 502(c). The statute remains the controlling authority, not a revoked and arguably inconsistent Rule provision. *In re Pacific Atlantic Trading Co.*, 33 F.3d 1064 (9th Cir.1994). As the Court previously held, to the extent the prior version of Rule 2003(b) actually granted authority to temporarily allow claims (as distinct from appearing to do so in derogation of the controlling statute), that authority was withdrawn by amendment to Rule 2003(b). Accordingly, and in light of the express language of § 702(a), the Court has no authority to temporarily allow otherwise disputed claims for voting purposes.

■ As noted, a threshold determination of an election under § 702 is a determination of the base or universe of creditors who are authorized to vote. How to calculate that universe has been considered by several courts, with two emerging lines of authority. One line, represented by *In re Lake States Commodities, Inc.*, 173 B.R. 642 (Bankr. N.D.Ill.1994), holds that the universe is defined by the proofs of claim or other writing filed before or at the § 341 meeting at which the election is held. 173 B.R. at 646. The other line recognizes a broader universe, as discussed in *In re Michelex, Ltd.*, 195 B.R. 993 (Bankr.W.D.Mich.1996). This Court agrees with the *Michelex* court and others that the universe is broader than filed claims or writings. In addition to the reasons stated by the *Michelex* court for its conclusion, there are others. In a Chapter 7 case, the claims bar date does not run until 90 days after the first date set for the meeting of creditors, [Rule 3002(c) ], and in many cases notice is given to creditors to not file claims until further notice, while the trustee ascertains whether there are any non-exempt assets which might produce a dividend. To say that the universe of possible voters is limited

to those who have filed proofs of claim or other writings is to allow certain creditors to self-select whether there will be an election and who will vote in it, without notice to the balance of the scheduled creditor body. Such a result is contrary to the congressional purpose of ensuring meaningful creditor participation in the process because the fewer claims are filed, the smaller the universe, and the smaller number of votes actually cast would be necessary for an election.

*Michelex* instructs that courts should look first to debtor's schedules to identify the amount of undisputed general unsecured claims, and to add to that the amount of any unscheduled proofs of claim to which no objection has been filed. There is a potential for abuse by debtors if schedules are improperly filed, whether debts are omitted, improperly classified, listed in incorrect amounts, or scheduled as undisputed or contingent. Courts confronted with such situations will have to devise ways to deal with them, such as requiring the filing of amended schedules. See *Michelex*, 195 B.R. at 1006, and n. 30.

■ In the present case, the debtor scheduled the claims of the Musicians as priority claims for wages, even though the amounts listed substantially exceeded the statutory ceiling for priority wages. None of the Musician claims were listed on Schedule F as general unsecured claims, even though the balance of the claim exceeding the priority wage cap would be general unsecured. In addition, the amount listed for the Musicians is substantially less than the amounts set out in the individual proofs of claim filed by the musicians.

■ Debtor originally listed on Schedule F $2,041,262.53 in claims. That Schedule was filed May 31, 1996. It was amended on June 7, 1996 to show a total of $1,286,356.53. The amendment did not change the claims scheduled for the Musicians in Schedule E. Only a small portion of the scheduled unsecured claims filed proofs of claim prior to the first meeting. Of the scheduled unsecured

debt, $1,049,234 did not file proofs of claim. However, proofs of claim, other than the Musicians, were filed with the Court or at the first meeting totalling $682,414.90, including the claim of San Diego National Bank filed at the § 341 meeting. That brings the total of nonsuperseded scheduled general unsecured claims, plus proofs of claim (not including the Musicians) to $1,731,638.90. Because the claims for the Musicians were listed in Schedule E even though many exceeded the cap, the Court would generally treat the amounts scheduled which are in excess of the statutory cap as general unsecured claims and would add that amount to the amended Schedule F total. That amount appears to be $351,858.91. However, the Musicians filed proofs of claim, and proofs of claim generally supersede the debtor's scheduled amount. Consequently, for purposes of calculating the universe of general unsecured claims the universe is $1,731,648.90 plus whatever amounts, if any, are added from the Musicians' proofs of claim. If no amounts are added for the Musicians' claims because they are found to be disputed within the meaning of § 702(a), then claims in the amount of $346,329.78, or 20% of the universe, must have requested an election. The Court agrees that creditors that voted for the interim trustee should be deemed to have not requested an election. *In re Oxborrow*, 913 F.2d 751, 753 (9th Cir.1990). Excluding the claims of the Musicians in their entirety, only $45,741.16 in claims actually requested an election, representing two claimants, neither of whom voted for a particular candidate.

It is noted that if the Musicians' general unsecured claims as determined by the excess from Schedule E were added to the universe of $1,731,648.90, the universe would become $2,083,507.81. Twenty percent of that is $416,701.56, which is more than the sum of $351,858.91 plus $45,741.16. Consequently, if the Musicians' general unsecured claims were allowed as erroneously scheduled, there would be less than 20% of the universe requesting the election, and no election would have been held. For an election to have been properly requested in this case,

the Musicians must be permitted to vote some substantial portion of their claims. Accordingly, to resolve the election dispute, the Court must determine whether the Musicians can vote any portion of their proofs of claim.

■■ The issue is whether the Musicians' claims are disputed within the meaning of § 702(a). For purposes of the present discussion, the Musicians' claims are deemed liquidated because they are based on alleged contractual obligations and, generally, contractual obligations are readily calculable, and therefore liquidated. *In re Fostvedt*, 823 F.2d 305 (9th Cir.1985); *In re Loya*, 123 B.R. 338 (9th Cir. BAP 1991).

■ The Musicians urge that the Court should "simply rule on the claims objections." But that argument, and process, begs the issue. The issue is whether at the time of the election the Musicians held allowable, undisputed, fixed and liquidated claims. For present purposes, the issue is whether there is a dispute to be resolved over the Musicians' claims. If there is, the claims are disputed and ineligible to request an election or vote as of the time of the election.

The few courts which have looked at the issue have recognized that if a timely objection to a claim has been filed, that claim cannot be counted among the § 702(a)(1) claims for purposes either of requesting an election or for voting in one. In *In re Aspen Marine Group, Inc.*, 189 B.R. 859, 862, 863 (Bankr.S.D.Fla.1995), a Chapter 11 case, the court recognized that the standards of § 702 and procedures of Rule 2003 were applicable to a Chapter 11 trustee election under 11 U.S.C. § 1104(b). The court there stated:

This Court also concludes that the Report correctly tabulated all claims for purposes of voting and of determining the total universe of claims to be counted for the Election. The Report, did not count claims to which objections were pending, and creditors that the Debtor listed as disputed and that had not filed a proof of claim. The Report did, however, count all claims listed in the Debtor's Schedules as

undisputed and non-contingent as eligible to vote, even though such creditors did not file proofs of claims.

The court recognized "that the proper time to compute the universe of voting creditors is at the time of an election." 189 B.R. at 863. The court then reiterated its earlier conclusion:

> This Court finds, therefore, that the Report correctly excluded from voting and from the total claimants all claims to which objections were pending at the time of the Election was and any subsequently filed claims.

*Id.*

The court in *In re Lake States Commodities, Inc.*, 173 B.R. 642 (Bankr.N.D.Ill.1994), recognized the issue, but did not have to resolve it because no timely objections were filed. The court observed:

> Section 502 and Fed.R.Bankr.P. 2003(b)(3) presume the allowance of the amount on the proofs of claim on file as of the date of the Section 341 meeting for voting purposes.
>
> > [This] presumption is overcome if there is an objection to the claim or the claim is insufficient on its face ... The burden of establishing the invalidity of the claim for this purpose is on the objector.
>
> 4 *Collier on Bankruptcy,* ¶ 702.01, p. 702–08 (15th Ed.1994) (citations omitted). Further, any objections must be made at the time the vote is taken.

173 B.R. at 647. The court then posed the rhetorical question: "In other words, due to an objection being filed were any claims deemed not allowable." *Id.* The court concluded no timely objections were made either collectively or to individual proofs of claim.

The discussion in *Collier's,* quoted above, is actually of little utility because as the paragraph in *Collier's* immediately following the quoted language indicates, the text still contemplates the temporary allowance of claims authorized prior to 1991. As already discussed, this Court has concluded that au-

thority to temporarily allow claims for voting purposes under § 702(a) no longer exists.

█ The interim trustee has borrowed from case law involving the filing of involuntary petitions under 11 U.S.C. § 303. To be a petitioning creditor, the claim must not be "contingent as to liability or the subject of a bona fide dispute ..." § 303(b)(1). The cases have indicated that the court should only look at the contested claim to ascertain whether there are genuine issues of law or fact. If so, the claim is disputed. *In re Lough,* 57 B.R. 993 (Bankr.E.D.Mich.1986), and its progeny. A similar approach is appropriate under § 702, although it can be argued that even less scrutiny is warranted under § 702 because § 702 does not on its face require a bona fide dispute, but only a dispute. The Congress knows how to modify "dispute" with the requirement of "bona fide" when it chooses. Section 303 is an example, as is § 363(f)(4).

At oral argument, counsel for the interim trustee suggested the test was to determine if the objection was non-frivolous. Counsel for the debtor has urged the same standard in the supplemental brief. However the test is labelled, what is clear is that any standard that requires determining the outcome of the claim objection, or the probability, or the reasonable possibility of the outcome goes too far into weighing the merits of the objection. This Court concludes that the test is no more than the bona fide dispute assessment of § 303(b), and it may well be even less than that.

Applying that standard to the objections to the Musicians' claims, the Court first notes that some portion of each Musician's claim is entitled to priority as wages. However, the parties have a factual dispute as to the business cessation date which impacts which 90 days are within the priority period. In turn, that fact determines what portion of the prepetition wage claims in excess of the priority portion are general unsecured claims. That is relevant because priority claims are excluded from the election process under § 702. Consequently, calculation of the

amount of prepetition general unsecured claims cannot be determined until the cessation date is resolved. The interim trustee has also argued that the claimants had a duty to mitigate, and that individual adjustments to claims must be made to recognize dates when claimants did not work.

The substantial majority of the Musicians' claims seek compensation for lost post-petition wages which the Musicians claim they were guaranteed regardless of the cessation of business. The interim trustee has objected on the ground that federal labor law precludes liability for wages after cessation of business. The trustee also asserts that if post-petition wages were recoverable there would be a corresponding duty to mitigate that claim.

By examining the claim and the claim objection, the Court cannot determine the cessation date, any duty to mitigate, or any entitlement to postpetition wages after a prepetition cessation of business. The objections are not patently unsupportable or frivolous. The Court expresses no opinion on their merits, only that they are sufficient to make the claims disputed within the meaning of § 702.

The interim trustee has also objected on the ground that the Musicians' claims are not allowable as long as they retain preferential transfers, as 11 U.S.C. § 502(d) instructs. At the time of the first meeting the Musicians and their Union apparently held a security interest in the Symphony's library, granted within 90 days immediately prepetition. Because eligibility to vote is calculated as of the date of the first meeting of creditors, the existence of that allegedly preferential security interest may have been enough to render those claims unallowable for § 702 purposes. As soon as they learned of the objection, however, the Musicians did everything they could to immediately return any interest they held in the library. Because of the Court's ruling that the Musicians' claims are disputed as already discussed, the Court need not reach whether those efforts to divest the security interest in the library was

sufficient or timely to otherwise permit the Musicians to participate under § 702.

The interim trustee also asserted that the Musicians have received preferential payments within 90 days before the filing. The trustee's declaration attached sufficient evidence of payments of antecedent debts within the 90 days to do much more than raise a suspicion of a preference. The interim trustee is not required to prove all the elements of a § 547 claim, but is required to provide some evidence on each. The trustee may rely on the presumption of insolvency found in § 547(f). The claimant may be able to establish one of the recognized defenses to a preference action, but the trustee is not required to provide evidence to rebut anticipated defenses when raising a § 502(d) objection to the allowability of a claim for § 702 election purposes. The trustee has provided sufficient evidence to invoke § 502(d) to dispute the allowability of the Musicians' claims for purposes of a § 702 election. Again, the Court expresses no opinion on the merits or likely outcome of any preference action which might be brought.

There is a final issue raised by the interim trustee which goes to the eligibility of the Musicians' claims to participate in this disputed election. Subsection (a)(2) of § 702 excludes creditors who have an interest "materially adverse ... to the interest of creditors entitled to such distributions...." While there is a paucity of decisions which discuss what might be an interest which is materially adverse, it has been suggested that a creditor with a secured and an unsecured portion of a secured claim might fit that test because of the creditor's usual preference to have as much of its claim defined as secured, and therefore senior in priority as can be accomplished. *In re Michelex Ltd.*, 195 B.R. 993, 1007 (Bankr.W.D.Mich. 1996). It is arguable that the wage claims of the Musicians, although they are subject to a $4,000 cap for priority allowance, may be in a similar position. Moreover, to the extent the Musicians press their claims for postpetition wages, which is a separate type of claim than

held by the balance of the prepetition unsecured creditors, that component of their claims may give them a materially adverse interest sufficient to disqualify them from the § 702 process.

There is another facet to the adverse interest issue, whether raised under § 702(a)(2) or independently. The Congress determined that only creditors with allowable, undisputed, fixed, liquidated unsecured claims should participate in the process of electing the trustee to administer the bankruptcy estate from which they will be paid, if at all. The Congress did not intend that creditors who had disputes with the estate over liability for or the amounts of their claims would be able to participate in the election process. As the interim trustee and the debtor have pointed out, it would be a strange perversion of the intent of § 702 to allow creditors who had disputed claims against the estate to participate in an election to choose their opposition.

For all the foregoing reasons, the Court concludes that the claims of the Musicians are disputed or not allowable within the meaning of 11 U.S.C. § 702, and therefore may not participate in any amount in either requesting or voting in an election under § 702. The Court has determined the universe of claims for requesting an election and without participation of a significant portion of the Musicians' claims, there is not the requisite 20% in amount of claims requesting an election. Because an insufficient amount of claims have requested an election, none has occurred, and the interim trustee remains in office.

IT IS SO ORDERED.