**In re MICHELEX LIMITED, Debtor.**

**Bankruptcy No. GL 95–85578.**

United States Bankruptcy Court, W.D. Michigan.

May 20, 1996.

Phillip J. Neuman, Troy, Michigan, for Pioneer Grain Company, Ltd.

Samuel D. Sweet, Troy, Michigan, for Rose E. Bareham.

Michael V. Maggio, Grand Rapids, Michigan, Office of United States Trustee.

## SUPPLEMENTAL MEMORANDUM OPINION REGARDING ELECTION OF TRUSTEE

JAMES D. GREGG, Bankruptcy Judge.

### I. ISSUE

How is the so-called "universe of claims," and the base amount of votable claims, calculated for the purpose of determining whether 20% of creditors who hold allowable, undisputed, fixed, liquidated, nonpriority, unsecured claims have requested and voted at a trustee election under § 702 of the Bankruptcy Code?[1]

### II. JURISDICTION

The court has jurisdiction over this contested matter. 28 U.S.C. § 1334 and § 157(b)(1). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) because it concerns the administration of the debtor's estate. This supplemental opinion constitutes the court's findings of fact and conclusions of law. FED.R.BANKR.P. 7052.[2]

### III. FACTS AND PROCEDURAL BACKGROUND

On October 26, 1995, an involuntary petition under chapter 7 of the Bankruptcy Code was filed against Michelex Limited ("Debt-

---

**1.** The Bankruptcy Code, as amended, is set forth in 11 U.S.C. §§ 101–1330. Unless otherwise stated, all further statutory references are to title 11 of the United States Code.

**2.** At the conclusion of the hearing regarding this contested matter, the court rendered an extem-

poraneous oral bench opinion. The court strongly believed an immediate decision was warranted to eliminate possible delay in administration of the estate. The parties were advised a supplemental written decision would be prepared and docketed as soon as possible.

or"). The petitioning creditor was Pioneer Grain Company, Ltd. ("Pioneer"). On November 17, 1995, the Debtor filed a consent to the entry of an order for relief under chapter 11 of the Bankruptcy Code. On November 20, 1995, this court entered an order for relief under chapter 11.

On December 7, 1995, the Debtor filed the requisite schedules and statement of affairs pursuant to the Bankruptcy Rules. On January 24, 1996, the Debtor sought conversion of the case from chapter 11 to chapter 7. On February 20, 1996, the court entered an Amended Order Converting Case Under Chapter 11 To Case Under Chapter 7.

The United States Trustee appointed Rose E. Bareham as the interim trustee to administer the chapter 7 case. The first meeting of creditors under § 341 of the Bankruptcy Code was scheduled to take place, and was commenced, on March 29, 1996.

The interim trustee convened the § 341 meeting and asked for appearances.[3] The Debtor's representative and the Debtor's attorney appeared. An attorney for Pioneer also appeared and provided the interim trustee a power of attorney given to him by Pioneer and a copy of a proof of claim previously filed by Pioneer in the amount of $527,-959.75. No other creditors appeared at the meeting.

Pioneer's attorney stated it held a claim in excess of 20% of the "votable claims", requested an election, and voted the Pioneer claim in favor of the election of Stuart A. Gold ("Gold"), as permanent trustee. The interim trustee, who had never previously been involved in an election, adjourned the § 341 meeting to seek guidance from the United States Trustee. As of the hearing of

this contested matter, the § 341 meeting had not been reconvened.

On April 9, 1996, Pioneer filed a motion for an order directing the United States Trustee to appoint Gold as the permanent chapter 7 trustee. Pioneer asserted the votable claims, i.e., the amount entitled to vote under § 702(a), totaled $716,505.95.[4] Pioneer alleged it held 73.7% of the votable claims and had properly requested and elected Gold as permanent trustee under § 702 of the Bankruptcy Code.

Almost immediately upon filing of Pioneer's motion, the court scheduled a hearing to take place on April 24, 1996, in Grand Rapids, Michigan. Notice of the hearing was subsequently properly served upon all creditors and other parties in interest.

On April 10, 1996, the interim trustee filed a Statement Pursuant To Bankruptcy Rule 2003(d).[5] The interim trustee reported that a disputed election occurred at the § 341 meeting.

On April 22, 1996, the United States Trustee also filed a report with the court "concerning the alleged disputed election". That report also raised a number of legal issues under § 702 of the Bankruptcy Code. The United States Trustee sought a determination whether the § 341 meeting should be reconvened to conduct an election or whether Gold should be appointed as permanent trustee based upon the election at the prior § 341 meeting.

On April 23, 1996, the interim trustee filed a response to Pioneer's motion for an order directing the United States Trustee to appoint Gold as permanent chapter 7 trustee. The interim trustee sought a determination

---

3. At the hearing of this contested matter, the parties agreed that the interim trustee had been designated by the United States Trustee to conduct the § 341 meeting. *See generally* FED. R.BANKR.P. 9001(11) (definition of "United States trustee" includes "any designee of the United States trustee.").

4. This assertion was based upon the aggregate amount of proofs of claim actually filed before the § 341 meeting. Pioneer attached a claims register to its motion.

5. FED.R.BANKR.P. 2003(d) states:

REPORT TO THE COURT. The presiding officer shall transmit to the court the name and address of any person elected trustee or entity elected a member of a creditors' committee. If an election is disputed, the presiding officer shall *promptly inform the court in writing that a dispute exists.* Pending disposition by the court of a disputed election for trustee, the interim trustee shall continue in office. If no motion for the resolution of such election dispute is made to the court within 10 days after the date of the creditors' meeting, the interim trustee shall serve as trustee in the case.

that the meeting was properly adjourned and no election had yet taken place. It was asserted that a number of interested creditors had subsequently expressed an interest in voting at an election and those creditors should be permitted to vote at an adjourned creditors' meeting. The interim trustee also requested a determination whether Pioneer held the requisite 20% of votable claims to properly request an election and whether Pioneer's vote should be counted.

At the hearing regarding the election dispute motion, all parties stipulated that Pioneer had filed a proof of claim on March 21, 1996, as a nonpriority unsecured claim, in the amount of $527,959.75. No party in interest objected to Pioneer's claim for election purposes and at that time its claim was deemed allowed under § 502(a) of the Bankruptcy Code.[6] No party asserted that Pioneer holds an interest which is materially adverse to other creditors or that Pioneer is an "insider" within the meaning of § 101(31). Therefore, the court finds that Pioneer is not disqualified from voting pursuant to § 702(a)(2) or (3). Pioneer holds a votable claim.

The parties stipulated to admit into evidence the Debtor's schedules, including "Amended Schedule F—Creditors Holding Unsecured Nonpriority Claims". The parties also stipulated that the court could take judicial notice of all proofs of claim filed, the dates of such filings, the content of the claims, and whether an objection to a claim was filed. Based upon these stipulations, the court has prepared a summary of scheduled unsecured claims and those creditors who filed proofs of claims at or prior to the disputed election at the § 341 meeting. That summary is appended to this opinion as "Attachment A".[7] Lastly, the parties stipulated that the Debtor's schedules are in good faith and do not appear to contain any material omissions or misrepresentations relating to the validity or nature of nonpriority unsecured debts.

## IV. DISCUSSION

### A. *Who May Request Election of a Trustee?*

#### 1. *Trustee Elections in General.*

[redacted] Section 702(a) of the Bankruptcy Code establishes those creditors who may vote for a chapter 7 trustee candidate.[8] For an election to take place, at least 20% of those creditors who "may vote" as defined in § 702(a) must request an election at the § 341 meeting. § 702(b).[9] If the requisite

6. Bankruptcy Rule 2003(b)(3) provides in part, "In the event of an objection to the amount or allowability of a claim for purpose of voting, unless the court orders otherwise, the United States Trustee shall tabulate the votes for each alternative presented by the dispute and, if resolution of such dispute is necessary to determine the result of the election, the tabulations for each alternative shall be reported to the court." Fed. R.Bankr.P. 2003(b)(3). Because no objection was made regarding the amount or allowability of Pioneer's claim, Pioneer was entitled to vote its claim. However, the United States Trustee's report addressed alternatives relating to whether Pioneer held at least 20% of the § 702(a)(1) universe of claims which was sufficient to request the election under § 702(b) of the Bankruptcy Code.

7. Attachment A lists all scheduled unsecured nonpriority claims, indicates whether each creditor's scheduled claim was listed as contingent, disputed, or unliquidated, and states whether each creditor filed a proof of claim, and the amount thereof, prior to the § 341 meeting. Proofs of claim filed as a priority claims or filed *after* the § 341 meeting, are not reflected in the summary. The summary also separately totals (1) all scheduled nonpriority unsecured claims and (2) all scheduled undisputed, fixed, liquidated, nonpriority unsecured claims.

8. Section 702(a) states:

> (a) A creditor may vote for a candidate for trustee only if such creditor—
> (1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;
> (2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and
> (3) is not an insider.

9. Section 702(b) states:

> (b) At the meeting of creditors held under section 341 of this title, creditors may elect one person to serve as trustee in the case if election of a trustee is requested by creditors that may vote under subsection (a) of this section, and that hold at least 20 percent in amount of the claims specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section.

percentage of creditors requests an election, at least 20% of those creditors who may vote must actually vote in the election in order for the election to be valid. § 702(c)(1).[10] At least one court has held that the Bankruptcy Code mandates two separate 20 percent requirements, each of which must be satisfied for a valid election to take place. *Berg v. Esposito (In re Oxborrow)*, 913 F.2d 751, 754 (9th Cir.1990) (although 26% voted in trustee election, only 14% requested the election to take place; therefore, prospective trustee not validly elected).

Section 702(a) does not expressly require that creditors must file a proof of claim in order to be eligible to vote for a trustee. However, the applicable Bankruptcy Rule states that a creditor is, "entitled to vote" at a trustee election only if the creditor has filed a proof of claim, or other sufficient writing, prior to, or at, the § 341 meeting.[11]

2. *Statutory Language.*

There often will be disparate results in a given trustee election depending how the "universe of claims" [12] that may vote is determined in accordance with § 702(a)(1). The two current interpretations of the universe of claims set forth in § 702(a)(1) are based upon scheduled nonpriority unsecured debts or based upon proofs of claim actually filed. *Compare Matter of Lindell Drop Forge Co.*, 111 B.R. 137 (Bankr.W.D.Mich.1990) (initially examine good faith schedules) *with In re Lake States Commodities, Inc.*, 173 B.R. 642 (Bankr.N.D.Ill.1994) (examine proofs of claim actually filed as of § 341 meeting date). The first interpretation will often result in a more expansive universe of claims; the second interpretation is more restrictive and will often constrict the universe of claims.[13]

---

**10.** Section 702(c)(1) states:
(c) A candidate for trustee is elected trustee if—
(1) creditors holding at least 20 percent in amount of the claims of a kind specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section vote; and
(2) such candidate receives the votes of creditors holding a majority in amount of claims specified in subsection (a)(1) of this section that are held by creditors that vote for a trustee.

**11.** Bankruptcy Rule 2003(b)(3) states:
*Right to Vote.* In a chapter 7 liquidation case, a creditor is entitled to vote at a meeting if, at or before the meeting, the creditor has filed a proof of claim or a writing setting forth facts evidencing a right to vote pursuant to § 702(a) of the Code unless objection is made to the claim or the proof of claim is insufficient on its face. A creditor of a partnership may file a proof of claim or writing evidencing a right to vote for the trustee for the estate of a general partner notwithstanding that a trustee for the estate of the partnership has previously qualified. In the event of an objection to the amount or allowability of a claim for the purpose of voting, unless the court orders otherwise, the United States trustee shall tabulate the votes for each alternative presented by the dispute and, if resolution of such dispute is necessary to determine the result of the election, the tabulations for each alternative shall be reported to the court.
FED.R.BANKR.P. 2003(b)(3).

**12.** *Matter of Lindell Drop Forge Co.*, 111 B.R. 137, 144 (Bankr.W.D.Mich.1990). In that opinion, this court attempted to coin a short descrip-

tive phrase to refer to the unwieldy language of § 702(a)(1). Alternatively, other courts have adopted different terminology to refer to the type of claims described in § 702(a)(1). *See, e.g., In re Lake States Commodities, Inc.*, 173 B.R. 642, 646 (Bankr.N.D.Ill.1994) ("the base of eligible claims"); *In re New York Produce Am. & Korean Auction Corp.*, 106 B.R. 42, 43 (Bankr.S.D.N.Y. 1989) ("the amount of claims specified in subsection (a)(1) of Section 702"); *In re Sandhurst Sec., Inc.*, 96 B.R. 451, 453 (Bankr.S.D.N.Y.1989) ("total allowable claims entitled to distribution in accordance with § 702(a)(1) of the Bankruptcy Code"); *In re Poage*, 92 B.R. 659, 663 (Bankr. N.D.Tex.1988) ("creditors who qualify under § 702(a)"); *In re Baton Rouge Marine Repair & Drydock, Inc.*, 57 B.R. 19, 21 (Bankr.M.D.La. 1985) (the court created the term "Potential Electors" in an "attempt to translate into English the statutory language found in Section 702"); *Matter of Blanchard Management Corp.*, 10 B.R. 186, 188 (Bankr.S.D.N.Y.1981) ("type of claims referred to in 11 U.S.C. § 702(a)"); *Matter of Tartan Constr. Co.*, 4 B.R. 655, 656 (Bankr. D.Neb.1980) ("the base amount of eligible claims").

**13.** A simple hypothetical illustrates this comparison. Assume the debtor's schedules list multiple entities that hold $100,000 in aggregate undisputed, fixed, liquidated, nonpriority, unsecured claims. None of the scheduled creditors is an insider or holds an interest that is materially adverse to other creditors. Only one creditor files a proof of claim at the time of the § 341 meeting. The claim is in the amount of $5,000 and is deemed allowed because no objection is lodged. The creditor appears, requests an election, and votes its claim for a prospective trustee.

■ Which of the two current interpretations is best supported by the statutory language? The initial focus must be on the word "allowable" in § 702(a)(1). The restrictive interpretation analyzes "allowable" as follows:

The Moving Creditors contend that in order to be included in the base of eligible claims to vote, a creditor must file a proof of claim or other writing evidencing a right to vote pursuant to Section 702. The [c]ourt agrees. This is apparent from the plain language of the Bankruptcy Code and Rules. Section 702(a)(1) states that a creditor is eligible to vote who is entitled to distribution under Sections 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h) or 766(i). All of these quoted sections of the Bankruptcy Code refer to distributions which would be made pursuant to a filed proof of claim.

More importantly, *Section 702 states a creditor must hold a claim which is "allowable". A prerequisite to the allowability of a claim is the filing of a written proof of claim. See* 11 U.S.C. § 502; Robert E. Ginsberg, *Bankruptcy: Text, Statutes, Rules,* § 10.08[c], p. 10–55 (1992).

*Lake States Commodities,* 173 B.R. at 646 (emphasis supplied).[14]

Is filing a written proof of claim or other writing which evidences a right to vote required to hold an "allowable" claim? Section 502(a) states in pertinent part that "[a] claim or interest, proof of which is filed under § 501 of this title, is deemed allowed...." Under the *Lake States Commodities* analysis, "allowable" and "allowed" have identical meanings.

■ "Allowable" and "allowed" are not defined in the Bankruptcy Code. *See generally* § 101 (setting forth 55 definitions for use in title 11).[15] "Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'" *Pioneer Investment Serv. Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380, 388, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993) (quoting *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) and utilizing Webster's Ninth New Collegiate Dictionary to define "neglect").

"Allowable" means "PERMISSIBLE: not forbidden: not unlawful or improper". WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 58 (Merriam–Webster 1986). "Allow" or "allowed" means "to accept as true as represented: ADMIT, CONCEDE, ACKNOWLEDGE". *Id.* A claim that is "allowable" is not necessarily "allowed". An "allowable" claim is permissible (i.e., not forbidden) in the *future.* An "allowed" claim is already admitted or accepted as true or as represented—the focus is on the *past.* An allowable claim as of the § 341 meeting is therefore capable of being allowed after the meeting. If Congress intended that a proof of claim must be filed before, or at, the § 341 meeting in order for the claim to be within the § 702(a)(1) universe of claims, why does § 702(a)(1) use the term "allowable" instead of "allowed" or "deemed allowed"? [16]

Utilizing the schedules results in no election of a trustee—only 5% of the § 702(a) claims requested an election and actually voted. Utilizing proofs of claim filed results in a valid election— 100% of the § 702(a) claims requested the election and 100% of these claims actually voted. Countless examples are possible. Assume all the same facts except the only creditor which files a proof of claim holds a claim for $5.00—under the claims filed interpretation, that creditor elects a trustee.

**14.** *See also* 3 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW & PRACTICE 2D § 65:4.1 n. 44 (1996) (agreeing with *Lake States Commodities* that the "base" should be limited to creditors who have filed a proof of claim and disagreeing with the more expansive approach adopted in *Lindell Drop Forge*).

**15.** A Supreme Court opinion referring to the meaning of "allowed claim" is not helpful. "[A]n allowed claim (the meaning of which is obvious)...." *Dewsnup v. Timm,* 502 U.S. 410, 420–21, 112 S.Ct. 773, 780, 116 L.Ed.2d 903 (1992) (Scalia, J., dissenting) (discussing "allowed claim" within the meaning of § 506(a)). If the meaning is "obvious" and the term is not defined in the Bankruptcy Code, one might logically conclude a common use definition is appropriate.

**16.** Congress must have been cognizant of the distinction between "allowable" and "allowed". In voting on chapter 11 plans, Congress determined only "allowed" claims may vote. "The holder of a claim or interest allowed under sec-

There is one cardinal canon of statutory interpretation that comes before all others. "[The Supreme Court has] stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). This court therefore rejects the *Lake States Commodities* interpretation that "allowable" in § 702(a)(1) means the same thing as "allowed" in § 502.

The second focus must be on the § 702(a)(1) phrase "claim of a kind entitled to distribution under Section 726(a)(2) [and] 726(a)(3) . . . ." Section 726(a)(2) and Section 726(a)(3) in turn refer to claims filed under § 501. Thus, the statutory language in § 702(a)(1) includes: (1) claims "timely filed under section 501(a)";[17] (2) claims "timely filed under section 501(b) or 501(c)";[18] (3) claims "tardily filed under section 501(a)", if the creditor did not have notice or actual knowledge in time to file a timely claim;[19] and (4) all other claims tardily filed, excluding creditors who tardily filed because of lack of notice or knowledge.[20]

Section 702(a)(1) includes claims "entitled to distribution" regardless of whether they are timely or tardily filed. Proofs of claim filed after the § 341 meeting are often timely and entitled to dividends in accordance with the § 726(a)(2) distribution priority.[21] Untimely filed claims are also entitled to dividends provided there is enough money in the estate to fully satisfy those higher on the distribution ladder. There is nothing in the *statutory language* contained in § 702(a)(1) that even remotely requires a creditor to timely file a proof of claim in order to be included in the universe of claims.[22]

"[It is] the settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 35–36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). "[C]ourts should disfavor interpretation of statutes that render language superfluous . . . ." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992).

The restrictive interpretation of the § 702(a)(1) universe of claims in *Lake States Commodities* is erroneous for at least two reasons.[23] First, "allowable" and "allowed" are not the same. An allowable claim is subject to being allowed in the future. A statutory construction which limits the universe of claims to proofs of claim actually filed misconstrues the meaning of "allowable". Second, the language in § 702(a)(1) implicitly includes, by reference, both timely filed claims (whether filed before or after the § 341 meeting) and tardily filed claims (that

tion 502 of this title may accept or reject a plan." 11 U.S.C. § 1126(a).

17. Section 501(a) is incorporated by reference in § 726(a)(2)(A). Section 501(a) permits a creditor or indenture trustee to file a proof of claim.

18. These subsections are also incorporated by reference in § 726(a)(2)(B). Section 501(b) permits an entity who is liable to a creditor, e.g., a guarantor, to file a proof of claim if the creditor does not timely file. The entity who is liable to a creditor is given an additional 30 days after the expiration of the bar date to file a proof of claim in the name of the creditor. FED.R.BANKR.P. 3005. Section 501(c) permits the debtor or trustee to file a proof of claim if the creditor does not timely file a proof of claim. The debtor or trustee is given an extra 30 days after expiration of the bar date to file the creditor's claim. FED. R.BANKR.P. 3004.

19. Again, § 501(a) permits the creditor to file a proof of claim. If a creditor fails to file before the bar date because of lack of notice or knowl-

edge of the case, and then subsequently files a claim, § 726(a)(2)(C) provides the creditor will receive a subordinate distribution priority.

20. Section 501 permits creditors to file late claims even when they had notice or actual knowledge of the case and chose not to timely file. Section 726(a)(3) establishes a subordinate priority position for such late filed claims.

21. For example, in this case, there have been additional proofs of claim filed after the March 29, 1996, Section 341 meeting. They have been timely filed before the chapter 7 bar date, i.e., 90 days after the first date for the Section 341 meeting. FED.R.BANKR.P. 3002(c).

22. The bankruptcy rule which requires filing a proof of claim to be "entitled to vote" is discussed *infra* section IV.A.4. (discussing FED. R.BANKR.P. 2003(b)(3)).

23. Other reasons exist as well that will be discussed *infra*.

must, by definition, be filed after the § 341 meeting). By concluding that the universe of claims is limited to super-timely filed proofs of claims (filed before or at the § 341 meeting), *Lake States Commodities* ignores a portion of the statutory language.

In contrast, the other interpretation of the § 702(a)(1) universe of claims, i.e., one should initially examine scheduled claims, is consistent with the statutory language. The expansive interpretation gives recognition to the Congressional intent to include "allowable" claims and untimely filed claims in the language of § 702(a)(1). A careful reading of the relevant statutory language contained in §§ 501, 702 and 726 tends to support the expansive view. However, when viewed in isolation, § 702(a)(1) is ambiguous and reasonable minds could differ on the composition of the universe of claims. Therefore, it is appropriate to consider the legislative history in order to discern the intent of Congress in drafting the statute.

### 3. *Legislative History.*

 When Congress clearly speaks, the plain meaning of a statute is conclusive. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242–43, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989). However, when a statute is ambiguous, legislative history may be examined. *Id.* "Whenever there is some uncertainty about the meaning of the statute, it is prudent to examine its legislative history." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 255, 112 S.Ct. 1146, 1150, 117 L.Ed.2d 391 (1992) (Stevens, J., concurring).

Section 702(a)(1) is ambiguous because of the uncertainty regarding the proper method to determine the universe of claims. Although the statutory language itself mandates the rejection of a conclusion that the universe of claims should be determined by solely utilizing proofs of claims actually filed, the language is silent regarding the appropriate method.

In its comments regarding the proposed legislation pertaining to election of trustees, the House Report identified a perceived evil of the old law:

> The notion of creditor control, while still theoretically sound, has failed in practical terms. Creditor control in bankruptcy cases is a myth. Creditors take little interest in pursuing a bankrupt debtor. They are unwilling to throw good money after bad. As a result, creditor participation in bankruptcy cases is very low. More often than not, the bankruptcy trustee is appointed by the judge, which generates some of the institutional bias problems noted above. Such a practice, while damaging to the system's appearance of integrity, is innocuous from the standpoint of creditor control. It does no harm to the debtor or to creditors.
>
> However, if there are assets available in a case, the vacuum created by the lack of creditor interest in the case is not in fact filled by the bankruptcy judge, and the result is not innocuous. In practice, creditor control has become attorney control, and the bankruptcy system operates more for the benefit of attorneys than for the benefit of creditors. The practices that have grown out of this shift of control often work to the detriment of both debtors and creditors. They benefit only those administering bankruptcy cases.
>
> The means by which those operating the system turn it to their own advantage are served [sic]. Frequently, an attorney that has represented a creditor in past cases will notify him of the bankruptcy of one of the creditor's current debtors. The attorney then obtains a proxy from the creditor to vote the creditor's interest in the case. An attorney may obtain numerous proxies in a particular case in this manner. When the trustee is to be elected, the attorney votes all of his proxies for a colleague. The colleague thus elected then hires the attorney to serve as counsel to the trustee in the case, assuring a fee for his services. The fee for counsel is usually substantially higher than the fee for the trustee, because it is not limited to a specified percentage under the Bankruptcy Act. In a subsequent case, the colleague and the attorney will switch places.

Report of the Committee on the Judiciary, House of Representatives, To Accompany H.R. 8200, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977), *reprinted in* App. Vol. 2

COLLIER ON BANKRUPTCY, Part II, p. 92 (Matthew Bender 15th ed. 1995).

To correct this perceived problem, Congress proposed new legislation relating to the possible election of a chapter 7 trustee. *See* H.R. 8200, 95th Cong., 1st Sess., as reported by the House Committee on the Judiciary, September 8, 1977 *reprinted in* App. Vol. 3 COLLIER ON BANKRUPTCY, Part III. The bill, with respect to the issue presented, is identical to the current law enacted by the Bankruptcy Code. In describing the proposed legislation, the House Report stated:

> At the first meeting of creditors, creditors will continue to have the right to elect a trustee of their own choice to serve in the case, subject to certain limitations not imposed under current law. The bill permits creditor election of a trustee only in cases in which at least creditors holding 20% in amount of certain *scheduled* unsecured claims request election of a trustee. The *minimum percentage request requirement is designed* to ensure that a trustee is elected only in cases in which there is true creditor interest, and *to discourage election of a trustee by attorneys for creditors,* as is so often the practice under current law. If a significant percentage of creditors does not wish to elect a trustee, it is unfair to impose the will of a few creditors' attorneys on the rest of the creditor body.
>
> *It will be more difficult under this procedure for a trustee to be elected unless there is actual creditor interest in the case.* In any case where there are significant assets, there is often creditor interest. The problems under current law occur most often in cases where the return to creditors from the estate promises to be small. Thus, they are uninterested, and attorneys can move in to control the case. By adopting the 20% requirement, the bill discourages attorney control, but retains the idea of true creditor control, because the theory of creditor control remains valid.

H.R.Rep. No. 95–595, *reprinted in* App. Vol. 2 COLLIER ON BANKRUPTCY, Part II, p. 102 (emphasis supplied.)

The Senate bill regarding trustee elections was nearly identical to the House bill. Nothing in Senate Report 95–989 contradicts or augments the legislative history contained in the House Report quoted above.[24] The House version regarding the universe of claims and the 20% requirement was ultimately enacted and the comments in the House Report should be accorded great weight.

It bears emphasis that the House Report refers explicitly to *"scheduled* unsecured claims". *Id.* "The report clearly indicates that all creditors, rather than only creditors who have filed proofs of claim, are to be counted." *Matter of Tartan Const. Co.,* 4 B.R. 655, 658 (Bankr.D.Neb.1980).

The legislative history also addresses policy reasons for the change from the prior law. The Bankruptcy Code is intended to make it more difficult to elect a trustee than was the practice under the prior law. The twin goals of encouraging creditor democracy yet hindering attorney control are served by the current statutory language. Section 702(a)(1) should be construed in a manner which is consistent with the legislative history.

> A purpose of the Bankruptcy Reform Act is to discourage the old fashioned type of electioneering associated with the election of a trustee. Often, the actual issue in the election of a trustee is who will be the attorney for the trustee, not who shall be the trustee.
>
> \* \* \* \* \* \*
>
> Often, under the Act, and especially when the return to creditors from the estate promised to be small there was little real creditor interest and attorneys would move in to control the case.
>
> The procedure under the Code makes it more difficult for a trustee to be elected

---

**24.** *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978) *reprinted in* App. Vol. 3 COLLIER ON BANKRUPTCY, Part V. The only change in the Senate bill related to the language "interest materially adverse". The Senate clarification regarding this phrase was ultimately adopted in the final version of the Bankruptcy Code.

unless there is actual creditor interest in the case.

The Code's 20% requirement discourages attorney control and attempts to revitalize the area of true creditor control.

*Matter of Blanchard Management Corp.*, 10 B.R. 186, 189 (Bankr.S.D.N.Y.1981) (footnotes omitted).

The legislative history of § 702(a)(1) expressly supports the expansive definition of the universe of claims based initially upon review of the debtor's schedules. Such a broad universe of claims also is consonant with Congress' intent to cure the problem of what may be characterized as "trustee wars" in which sophisticated attorneys attempt to engineer the election of a friendly trustee.

The opinion in *Lake States Commodities* which adopts a restrictive universe of claims completely disregards the legislative history which refers to "scheduled" claims. It also ignores the public policy reasons for change of the prior law. Except for acknowledging the 20% requirement in § 702(b), the result from the *Lake States Commodities* analysis will often be identical to that which would have occurred under the prior law.[25]

Thus, the relevant legislative history supports a broad interpretation of § 702(a)(1) under which the universe of claims should initially be determined by utilizing the debtor's schedules. The same legislative history also severely undermines the restrictive interpretation as set forth in *Lake States Commodities* that the universe of claims consists only of proofs of claim actually filed.

### 4. *The Bankruptcy Rules.*

 Section 702(a)(1) states certain unsecured creditors "may vote" if they are "enti-

tled to distribution" under certain subsections of the Bankruptcy Code.[26] The term "may" is not included within the rules of construction in § 102. However, "may not" is to be construed as "prohibitive, and not permissive". § 102(4). Logically, and in accordance with common usage, "may" means "have permission to" or "have liberty to". WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1396 (Merriam–Webster 1986). Thus, the phrase "may vote", within the meaning of § 702(a)(1), is permissive and not prohibitive nor mandatory.

Bankruptcy Rule 2003(b)(3) states a creditor is "entitled to vote" if the creditor files "a proof of claim or a [qualifying] writing" at, or before, the § 341 meeting.[27] "Entitle" means to "qualify for something" or "furnish with proper grounds for seeking or claiming something". WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 758 (Merriam–Webster 1986).

Does Bankruptcy Rule 2003(b)(3) conflict with § 702? One court has addressed the prior Interim Bankruptcy Rule 2003(b)(3) and stated "[a]lthough Interim Rule 2003(b)(3) governs only eligibility to vote, it affects computation of the base [i.e., universe of claims] because Section 702(b) incorporates the eligibility requirements into the '20 percent' rule." *Matter of Tartan Const. Co.*, 4 B.R. at 656 n. 2. The *Tartan* court found "Interim Bankruptcy Rule 2003(b)(2) is inconsistent with the Bankruptcy Code and is overruled." *Id.* at 658. "A creditor who meets the requirements of § 702(a) of the Bankruptcy Code need not file a proof of claim to be eligible to vote." *Id.* Because the current Bankruptcy Rule also requires

---

**25.** *See generally* Lawrence P. King, 12 COLLIER ON BANKRUPTCY ¶¶ 207.01, 207.03, 207.05, 207.07, 207.10, 209.10, 209.02, 209.03, 209.04 (14th ed. Matthew Bender 1978). Prior Bankruptcy Rules 207 and 209 (which then substantively modified the Bankruptcy Act), mandated an election for the trustee be held at the first meeting of creditors and that only those creditors who had filed proofs of claims could vote. Because there was no 20% requirement, in a small case, with minimal creditor involvement, a single creditor could control the election and choose the trustee. It is this court's belief that it was not uncommon for the creditor and the trustee to be elected to have

an advance understanding or agreement of which attorney would represent the trustee. *Lake States Commodities* permits this disfavored practice to easily continue in spite of Congressional disapproval. On the other hand, utilizing 20% of the *scheduled* claims discourages such a result and comports with the Congressional intent and policy in modifying prior law. *See supra* note 13.

**26.** *See supra* section IV.A.2.

**27.** *See supra* note 11 for the full text of the rule.

the filing of a proof of claim for a creditor to be "entitled to vote", this is an open issue.

A recent decision has glossed over this issue with minimal discussion and little analysis.

> The [c]ourt notes that a few courts have found Fed. R. Bankr. P. 2003 inconsistent with Section 702. [citations omitted.] Since the Bankruptcy Code and Rules should be read in harmony whenever possible, the [c]ourt does not find a conflict. Further, since Fed. R. Bankr. P. 2003 is specifically designed to effectuate the procedure in a trustee election, the [c]ourt will not read the Bankruptcy Rules inconsistently with the Code. As the name implies, the Federal Rule of Bankruptcy Procedure governs the procedure in cases under the Bankruptcy Code. Adhering to the proper procedure is essential in any election.

*Lake States Commodities,* 173 B.R. at 646. As will be explained below, *Lake States Commodities* only pays lip service to the Code–Rule harmony requirement. It actually *creates* a conflict between § 702(a)(1) and FED. R.BANKR.P. 2003(b)(3).

 "The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11. Such rules shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075. "Court rules are strongly presumed to be within the guidelines of their enabling statute because they are drafted by the judges who must rule on their validity." *In re Zimmerman,* 156 B.R. 192, 196 (Bankr.W.D.Mich.1993) *(en banc)* *(citing Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965)). "Moreover, the rules are presumed to reflect Congress's intent because Congress acquiesces to their acceptance." *Id.* (citing *Sibbach v. Wilson & Co.,* 312 U.S. 1, 14–15, 61 S.Ct. 422, 427, 85 L.Ed. 479 (1941)).

The distinction between substantive law and procedural rules is sometimes problematic because the rules necessarily will affect substantive outcomes. *Id.* A common illustration will suffice. Section 362(d) states that the court shall grant relief from stay upon request by a party, after notice and hearing, if certain facts are shown to exist. The Bankruptcy Code states the substantive law or "what is required" to obtain relief. Bankruptcy Rule 9013 generally requires that a written motion be filed to obtain relief, i.e., "how to do it". If a party is clearly entitled to relief from the automatic stay but fails to file a motion requesting the relief, the party's substantive rights are denied (or delayed until the proper procedure is followed). The rule which requires that a motion be filed affects the party's substantive rights. However, the rule does not affect the substantive law, i.e., "what is required" to ultimately obtain relief from stay.

In trustee elections, the substantive law is set forth in § 702. Creditors who hold certain types of allowable claims which are entitled to future distribution "may vote". The Code defines those creditors and mandates "what is required" for a valid election to occur. Bankruptcy Rule 2003(b)(3) establishes the procedures which determine "how to" vote. Generally, it requires that a proof of claim or other qualifying writing be filed by a creditor who desires to vote. Absent such a writing, the creditor is not "entitled to vote". As long as the requirement of a writing does "not abridge, enlarge or modify any substantive right", *see* 28 U.S.C. § 2075, the rule is valid and enforceable. This is true even if the rule may affect the party's ability to assert or enforce its substantive voting right.

There must be a method by which the presiding officer (and other creditors) at the § 341 meeting may determine whether an entity holds an allowable, undisputed, fixed, liquidated, nonpriority, unsecured claim, which is entitled to a future distribution in the case. There also must be sufficient information for the presiding officer and for creditors to determine whether an objection to a given creditor's vote is appropriate. The procedural requirement that the creditor who is seeking to vote file a written claim facilitates the election process. This requirement of filing a writing before or at the § 341 meeting is tantamount to registering for the election. *Lindell Drop Forge,* 111 B.R. at 143 (Bankr.W.D.Mich.1990) ("The Bankrupt-

cy Code recognizes and grants rights to creditors to elect a Chapter 7 trustee. However, as is the case in general elections for national, state or local political candidates, an otherwise eligible voter must properly register in advance of the election.").

To eliminate the Bankruptcy Rule registration requirement would invite election anarchy. If Bankruptcy Rule 2003(b)(3) did not exist, or is deemed unenforceable, it would be procedurally impracticable to conduct a meaningful trustee election because of the inability of those participating to determine whether a given creditor "may vote" pursuant to § 702(a).[28]

The analysis in *Lake States Commodities* creates a dissonance between § 702(a) and Bankruptcy Rule 2003(b)(3). That court reaches the conclusion that there is no conflict because "the [c]ourt will not read the Bankruptcy Rules inconsistently with the Code." *Lake States Commodities*, 173 B.R. at 646. However, by determining the universe of claims is based only upon proofs of claim actually filed, the rule which procedurally defines who is "entitled to vote" supplants the Code substantive language regarding who "may vote". By displacing § 702(a)(1) with Bankruptcy Rule 2003(b)(3), *Lake States Commodities* mistakenly constricts the universe of claims and impermissibly modifies substantive law.

Given the presumption of validity and the above analysis, this court finds that Bankruptcy Rule 2003(b)(3) provides a procedural method by which a trustee election shall take place. Qualification to vote under § 702(a) is different from entitlement to vote under Bankruptcy Rule 2003(b)(3). The Rule does not modify the substantive law in § 702(a) which establishes those creditors that "may vote".

*5. Summary.*

The universe of claims under § 702(a)(1) should not be restricted to proofs of claims actually filed at, or before, the § 341 meeting. The proper method to determine the universe of claims is to initially rely upon the debtor's schedules.[29] This conclusion is mandated by the statutory language, the legislative history, the policy rationale, and the interrelationship between the Code section and the applicable Rule.

**B. Who "May Vote" For A Trustee?**

**1. Initially Examine Good Faith Schedules.**

 "[A] debtor's schedules should first be utilized to determine holders of unsecured claims who may request an election under § 702(a)." *Lindell Drop Forge*, 111 B.R. at 145. Are the schedules in good faith? If so, they can be initially relied upon.[30]

---

**28.** The writing requirement also protects those creditors who may be wrongfully excluded by the debtor's schedules from the initial universe of claims. For example, a creditor may have a state court final judgment which conclusively establishes liability and damages. The creditor's claim is therefore undisputed, fixed and liquidated. For whatever reason, the debtor lists the debt as "disputed" on the schedules. When the creditor files its proof of claim, notwithstanding the debtor's schedules, the creditor is included in the universe of claims and "may vote" within the meaning of § 702(a)(1). By filing the proof of claim, the creditor is also procedurally "entitled to vote" within the meaning of FED.R.BANKR.P. 2003(b)(3). In this scenario, filing a proof of claim serves a dual purpose.

**29.** As discussed in Section IV.B.2–4. *infra*, the information contained in the schedules must be adjusted in certain circumstances.

**30.** If the schedules are lacking in good faith, materially incomplete, or not filed, serious problems may arise. Because of the initial impor-

tance of the scheduled claims, an issue will exist whether an election should proceed in absence of adequate schedules. The debtor might be ordered to file amended schedules. § 521(1); § 105(a); FED.R.BANKR.P. 1007(b) and 1009(a). The "debtor" includes officers, directors, and persons in control of corporations, FED. R.BANKR.P. 9001(5)(A), and general partners or other persons in control of partnerships, FED. R.BANKR.P. 9001(5)(B). Upon noncompliance, contempt remedies may be sought. Alternatively, the court might order the interim trustee, a petitioning creditor, or other party to prepare or amend the schedules. FED.R.BANKR.P. 1007(k). *But see, Matter of Blanchard Mgmt. Corp.*, 10 B.R. 186, 188 (Bankr.S.D.N.Y.1981) (because no schedules were ever filed, it was not possible to determine whether 20% requirement was met to request an election; since there was no election, the interim trustee continued to serve).

The *Blanchard* analysis denies creditors an opportunity to vote for a trustee through no fault of their own. If this case is followed, a dilatory or

Because § 702(a)(1) focuses on unsecured claims, "Schedule F—Creditors Holding Unsecured Nonpriority Claims" is relevant and should be the primary focus. "Schedule E—Creditors Holding Unsecured Priority Claims" should be ignored. Section 702(a)(1) does not incorporate by reference § 726(a)(1) priority claims within the universe of claims. Therefore, priority claims may not vote in the trustee election.

Although it is debatable, "Schedule D—Creditors Holding Secured Claims" should not be considered. *But see, Tartan Const. Co.,* 4 B.R. at 659 ("[T]hough less than perfect ... the unsecured portion of the claims listed as secured would be determined by subtracting the scheduled value of the secured property from the scheduled secured claims. To this figure would be added the scheduled nonpriority unsecured claims."). Fully secured creditors are not unsecured and cannot vote.

However, undersecured creditors under § 506(a) hold bifurcated claims, of which one claim is unsecured.[31] If such a creditor seeks to vote the unsecured portion of its claim in a trustee election, a dispute is probable. First, at the election it will be difficult to value the collateral to determine the secured portion of the claim. Second, the unsecured portion of the claim may not be "fixed" within the meaning of § 702(a)(1). *Matter of NNLC Corp.,* 96 B.R. 7, 9 (Bankr. D.Conn.1989). Finally, an undersecured creditor may hold an interest materially adverse to other creditors. *Cf. In re New York Produce Am. & Korean Auction Corp.,* 106 B.R. 42, 43 (Bankr.S.D.N.Y.1989) (involving asserted adverse interests by claimed trust beneficiaries).

2. *Subtract those Creditors who are Listed as Holding Disputed, Contingent or Unliquidated Claims.*

In this court's previously reported trustee election case, the issue was left open whether disputed or unliquidated claims should be subtracted from the total of scheduled unsecured claims. *Lindell Drop Forge,* 111 B.R. at 146 n. 2. In that case, it was not necessary to decide the issue. In this case, it is.

The court now determines that all creditors listed on the schedules as holding disputed, contingent or unliquidated claims must be excluded from the § 702(a)(1) universe of claims. This conclusion is logically mandated by the statutory language itself. An election may be requested by "at least 20 percent of the amount of the claims specified in [§ 702(a)(1)] that are held by creditors who may vote under [§ 702(a)(1)–(3)]." *See* § 702(b). Therefore, the statute mandates that only those creditors who may vote, i.e., holders of undisputed, fixed, liquidated, nonpriority, unsecured claims, are included. "Claimants whose claims are nebulous or incapable of any definition are barred from voter participation." *In re Klein,* 110 B.R. 862, 874 (Bankr.N.D.Ill.1990), *rev'd in part on other grounds,* 119 B.R. 971 (N.D.Ill. 1990).

Initially excluded are all creditors who are listed on Schedule F as disputed, contingent and/or unliquidated.[32] In this case, all scheduled nonpriority unsecured claims total $2,762,558.84. *See* Attachment A. After deleting the claims listed as contingent, unliquidated, or disputed on Schedule F, the

---

bad faith debtor may unilaterally thwart the creditors' opportunity to request an election.

31. However, when considering possible adjustments to the schedules, a creditor who is listed as "secured" may waive its security. As previously recognized by this court, the creditor would then hold an unsecured claim. *Lindell Drop Forge,* 111 B.R. at 146 (citing *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 379, 108 S.Ct. 626, 634, 98 L.Ed.2d 740 (1988)).

32. "Disputed" and "unliquidated" debts are to be designated on a debtor's schedules. However, claims not "fixed" are not designated. Rath-

er, Schedule F requires that "contingent" debts be designated. "Fixed" means to "fasten a liability upon". *Farrey v. Sanderfoot,* 500 U.S. 291, 296, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991) (citing BLACK'S LAW DICTIONARY 637 (6th ed. 1990)). If a debt is not "fixed", the liability is not yet fastened. "A claim is 'fixed' under § 702(a)(1) so long as it is not a 'contingent' claim." *In re Klein,* 110 B.R. 862, 871 (Bankr. N.D.Ill.1990), *rev'd in part on other grounds,* 119 B.R. 971 (N.D.Ill.1990). Therefore, those scheduled debts listed as "contingent" should be deleted as not "fixed".

§ 702(a)(1) universe of claims is adjusted to $1,102,830.55.

3. *Further Adjust the Universe of Claims by Utilizing Proofs of Claim or Other Qualifying Writings Timely Filed for Election Purposes.*

■ A proof of claim filed under § 501 is deemed allowed unless a party in interest objects. § 502(a). A proof of claim filed in accordance with the Bankruptcy Rules is accorded a *prima facie* evidentiary effect as to the validity and amount of the claim. FED. R.BANKR.P. 3001(f). When a proper proof of claim is filed before, or at, the § 341 meeting, it supersedes the debtor's schedules.[33] The universe of claims must be adjusted by the proofs of claims actually filed.[34]

In this case, the following adjustments to Schedule F are necessary:

(1) Consumers Power was scheduled with the amount of its claim listed as "unknown". Claim No. 5 was filed before the § 341 meeting in the amount of $67.14. The § 702(a)(1) universe of claims is increased by $67.14.

(2) DW Sturt & Co. was scheduled as holding a claim in the amount of $33,545.00. It filed Claim No. 1 before the § 341 meeting in the amount of $79,141.06. The § 702(a)(1) universe of claims is increased by $45,596.06.

(3) Finora Co. was scheduled at $99,-464.99. It filed Claim No. 4 in the amount of $108,837.50 before the § 341 meeting. This increases the universe of claims by $9,372.51.

(4) Pioneer was scheduled for $507,057.91. It filed Claim No. 7 before the § 341 meeting in an amount of $527,959.75. The § 702(a)(1) universe of claims must be increased by $20,-901.84.

Based upon proofs of claim filed in this case, the universe of claims is increased by $75,937.55, i.e., from $1,102,830.55 to $1,178,-768.10.[35]

■ Claims filed after the § 341 meeting but before the hearing on the disputed election are not considered in adjusting the universe of claims. The claims that "may vote" are established at the time of the election and not on some later date. In this case, a number of creditors filed proofs of claim after the election and before the election dispute hearing. The court has not considered those proofs of claim in its calculations to adjust Schedule F.

4. *Subtract All Disqualified Claims Under § 702(a)(2) and (3).*

Section 702(a)(2) and (3) disqualifies certain types of other creditors from voting. Those creditors must be subtracted from the universe of claims to determine the "votable claims".[36] Section 702(a)(2) disqualifies those

---

**33.** This is equally true if a qualifying writing under FED.R.BANKR.P. 2003(b)(3) is filed. For example, an informal proof of claim should also suffice to overcome information regarding a creditor's claim in a debtor's Schedule F. *See, e.g., Wright v. Holm (In re Holm),* 931 F.2d 620, 622 (9th Cir.1991); *The Charter Co. v. Dioxin Claimants (In re Charter Co.),* 876 F.2d 861, 863 (11th Cir.1989); *Liakas v. Creditors' Committee of Deja Vu, Inc.,* 780 F.2d 176, 178 (1st Cir.1986); *Wilkens v. Simon Bros., Inc.,* 731 F.2d 462, 464–65 (7th Cir.1984); *In re Butterworth,* 50 B.R. 320, 322–23 (W.D.Mich.1984); *In re McCoy Mgmt. Servs., Inc.,* 44 B.R. 215, 217 (Bankr. W.D.Ky.1984). *See also In re Dietz,* 136 B.R. 459, 463–64 (Bankr.E.D.Mich.1992) (letter from creditor to chapter 13 trustee constitutes informal proof of claim).

**34.** This procedure was apparently utilized by the United States Trustee in another disputed election. *In re Sandhurst Sec., Inc.,* 96 B.R. 451, 453 (Bankr.S.D.N.Y.1989) ("The U.S. Trustee's Report notes that, according to the Debtor's sched-

ules, as adjusted in light of the proofs of claim filed at the Section 341 Meeting....").

**35.** In this case, it is happenstance that all proofs of claim actually filed were greater than the scheduled amounts. Under different facts, the universe of claims could be less than the scheduled amount if the aggregate amount of proofs of claim filed were less than those creditors' scheduled amounts.

Also, in this case, no creditor listed as disputed, contingent, or unliquidated filed a proof of claim before the § 341 meeting. If such a creditor had done so, its claim would have been included in the universe of claims because the claim would have been "deemed allowed" and no longer considered as disputed, contingent or unliquidated, within the meaning of § 702(a)(1).

**36.** The court has adopted this term from Pioneer's legal memorandum. In another case, the term " 'Qualified Electors' claims" was used. *In re Baton Rouge Marine Repair & Drydock, Inc.,* 57 B.R. 19, 21 (Bankr.M.D.La.1985).

creditors from voting at a trustee election if the creditor has an "interest materially adverse" to the interest of creditors in the § 702(a)(1) universe of claims. "Neither the Code nor the Bankruptcy Rules provide a definition of the phrase 'interest materially adverse' used in § 702(a)(2). The legislative history, however, indicates that a court is required to balance the competing factors in any specific instance to make its determination." *In re New York Produce Am. & Korean Auction Corp.*, 106 B.R. 42, 47 (Bankr.S.D.N.Y.1989).

In this case, there was no assertion that any creditor held an interest materially adverse to other creditors. No adjustment to the pool of creditors that may vote is required.

Section 702(a)(3) requires disqualification from voting by creditors who are "insiders". See § 101(31). No creditor was alleged to be an insider in this election dispute and no adjustment to the amount of claims that "may vote" under § 702(a) is necessary.

#### 5. *Summary.*

After initially reviewing the schedules and making all necessary adjustments, the universe of claims under § 702(a)(1) is $1,178,-768.10. Because there was no disqualification of any creditor who held an interest materially adverse to other creditors or who was an insider, the amount of "votable claims" is also $1,178,768.10.

### C. *Was The ·Trustee Election Validly Requested And Properly Conducted?*

#### 1. *Request for Election.*

▮ Section 702(b) requires that creditors who hold 20 percent of the votable claims under § 702(a) must request an election. In this case, the amount necessary to request an election is calculated in accordance with the following formula: $1,178,768.10 \times .20 = $235,753.62$.

Pioneer was the only creditor who requested an election. Its claim is in the amount of $527,959.75. Pioneer holds a votable claim.

When Pioneer requested the election, more than 20 percent of the votable claims made the request. The requirement of § 702(b) has therefore been met.

#### 2. *The Voting at the Election.*

Pioneer filed a proof of claim before the § 341 meeting. Pioneer properly registered and was "entitled to vote" under Bankruptcy Rule 2003(b)(3).[37]

Pioneer was the only creditor who voted. Pioneer, by casting its vote in the amount of $527,959.75, caused 44.79% of the amount of votable claims under § 702(a) to actually vote. The 20 percent requirement set forth in § 702(c)(1) was therefore met. The fact that only one creditor actually voted is not significant. *In re Sforza*, 174 B.R. 656, 658 n. 3 (Bankr.D.Mass.1994) (citing *In re Poage*, 92 B.R. at 664). There is nothing in the Bankruptcy Code that requires any type of a quorum in trustee elections.

Pioneer cast its vote for Gold as the permanent trustee. Because no other creditor voted, Gold received 100 percent of the votable claims which actually voted at the election.

### D. *Should The Election Take Place Again?*

The interim trustee adjourned the § 341 meeting to "obtain guidance" from the United States Trustee. The interim trustee has requested that another election be held at the continued § 341 meeting. Pioneer objects to any new election, arguing the interim trustee should not be allowed to "round up" votes. This court agrees with Pioneer.

▮ As noted above, Rose Bareham, the interim trustee, was designated by the United States Trustee to conduct the § 341 meeting. At the § 341 meeting, the interim trustee, as the United States Trustee's designee, would preside and conduct a trustee election if requested by a creditor. FED. R.BANKR.P. 2003(b)(1). A trustee, whether interim or permanent, is a fiduciary who is obligated to treat all parties fairly. *In re*

---

**37.** Only four creditors filed proofs of claim and were entitled to vote at the election. See Attachment A.

*Poage,* 92 B.R. at 662. This duty may include supervising an election when requested. The interim trustee's supervision must be exercised in a manner which recognizes and is consonant with the creditors' rights and interests and without regard to the trustee's own desires to ultimately be appointed to administer the case.

If an election takes place and is not disputed, the United States Trustee, or the interim trustee as its designee, should transmit a report to the court with the name and address of the elected trustee. Fed.R.Bankr.P. 2003(d). If the election is disputed, a written report should inform the court of the dispute. *Id.*

 This court, in agreement with the weight of authority, has previously determined that the interim trustee has standing to object to a § 702 election. *Lindell Drop Forge,* 111 B.R. at 141. However, any objection made by the interim trustee must be premised solely upon the interests of creditors and the goal that the election process be valid and honest under § 702 of the Bankruptcy Code.

 In this case, it is not in the creditors' best interests to reconvene the § 341 meeting to conduct another election.

"No fraud, collusion, adverse interest, creditor misconduct, or other relevant reason has been advanced to reconvene the § 341 meeting and hold another election or to obtain other equitable relief."

*Lindell Drop Forge Co.,* 111 B.R. at 144.

Trustee election disputes must be rapidly concluded. An election dispute may effectively halt or delay administration of an estate. *In re Sandhurst Sec., Inc.,* 96 B.R. 451, 457 (Bankr.S.D.N.Y.1989). Speed and efficiency is absolutely necessary in bankruptcy cases. Delay results in devaluation of assets, impediment to the exercise of rights, and increased administrative costs. Delay has a negative impact upon both debtors and creditors and should be avoided whenever possible. Undue delay is far worse—the estate may rot before anything may be recovered.

The interests of debtors and creditors in a functioning bankruptcy system outweighs the interests of a small number of creditors who may seek to upset the election of a trustee. In this case, all creditors were given an opportunity to appear at the § 341 meeting to elect a trustee. Just because Pioneer was the only creditor who chose to exercise its right does not weigh in favor of conducting yet another election.

 To the extent possible, a bankruptcy court should avoid the possible delay from an election gridlock.[38] The court should exercise discretion to propel a chapter 7 case toward distribution to creditors and closure of the case to the maximum extent possible. Another trustee election is not warranted in this case.

## V. CONCLUSION

Pioneer validly elected Gold as the permanent chapter 7 trustee in this case. The court denies the interim trustee's request for another election. An order has been entered.

## Attachment A
### SUMMARY OF DEBTOR'S SCHEDULE F
"Creditors Holding Unsecured Nonpriority Claims"

| Name of Creditor & Consideration | Contingent, Unliquidated or Disputed? | Scheduled Amount | Was Proof of Claim Filed? Date & Amount |
|---|---|---|---|
| AT & T (telephone service) | No | Unknown | No |

---

[38]. It was for this reason the court promptly rendered this opinion from the bench and then issued this supplemental written opinion at a later time. The court suspects that many other bankruptcy judges also render oral opinions in trustee election disputes. This may account for the relative paucity of written opinions which address § 702 issues.