**In re John D. WILLIAMS, Debtor.**

**No. SV 01–13240 GM.**

United States Bankruptcy Court, C.D. California.

April 29, 2002.

John D. Williams, Oak Park, CA, pro se.

Brad D. Krasnoff, Los Angeles, CA, trustee.

**MEMORANDUM OF OPINION RE CONTESTED ELECTION OF TRUSTEE**

GERALDINE MUND, Bankruptcy Judge.

## I. INTRODUCTION

This case was originally filed on April 6, 2001 under Chapter 13. The Court subsequently determined that debtor John D. Williams ("Debtor") was ineligible to be a

debtor under that chapter and converted the case to Chapter 7. Brad Krasnoff was appointed interim trustee. At the first meeting of creditors, Rosemary Swenson ("Swenson")[1] called for a contested election and voted for Byron Moldo to become permanent trustee. On March 26, 2002, Swenson filed a motion to certify the election of Byron Moldo in place of Brad Krasnoff as Chapter 7 trustee under 11 U.S.C. § 702.[2] On April 9, 2002, on the application of Debtor, the Court entered an order converting this case from Chapter 7 to Chapter 11, but the Court also required that a trustee be appointed. The United States Trustee has selected Brad Krasnoff as interim Chapter 11 trustee and counsel for Swenson has indicated that once again there will be a contested election at the 341(a) meeting, which is scheduled for May 21, 2002. For that reason the motion brought by Swenson is not moot, but will be deemed also to be a motion to determine whether Swenson is eligible to vote for a trustee under Chapter 11 pursuant to § 702(a), as incorporated in § 1104(b). Specifically, this opinion addresses the issues of whether Swenson's claims are undisputed, unsecured and allowable as required by § 702(a)(1) and whether she has an interest which is not materially adverse to the interest of creditors entitled to distribution as mandated by § 702(a)(2).

## II. PROCEDURAL FACTS

On November 29, 2000, Swenson was granted judgment in the Los Angeles Superior Court against Debtor in the amount of $145,972. She recorded an abstract of judgment in Ventura County on December 20, 2000. On February 1, 2001, Swenson was awarded a second judgment in the same case in the amount of $29,306.07. She recorded her abstract on that judgment in Ventura County on February 23, 2001, which was within the 90–day period before the bankruptcy was filed. She also recorded abstracts for both judgments in Riverside County on March 8, 2001. Both judgments are on appeal.

Swenson filed two proofs of claim in this case, each asserting a secured interest in real property, which she valued at $507,000 (claims 5 and 6 as amended August 13, 2001).

Debtor's amended Schedule A identifies two parcels of real property: a residence in Ventura County, which he valued at $430,000, and vacant land in Riverside County, which he valued at $3,000. Prior to the recording of Swenson's abstracts of judgment and between 91 and 365 days before the bankruptcy was filed, Debtor recorded two deeds of trust on his residence: one in favor of Colleen Hain (his former spouse) and the other in favor of Maria Callas (his mother). He also gave Maria Callas a deed of trust on the vacant land. If the liens created by these deeds of trust are not avoided, there may be no equity to support a secured claim for Swenson. As of this date, no adversary action has been filed challenging the Hain and Callas liens and no final determination has been made as to the fair market value of the real property.

Debtor scheduled Swenson's claim as contingent, unsecured, disputed, subject to setoff and in an unknown amount.[3] As noted, Swenson has filed two secured proofs of claim, totaling approximately $175,000. Debtor filed objections to both claims, which have been deferred pending

1. Rosemary Swenson is named individually and as a Trustee of the Marie L. Swenson Living Trust U/T/D. The Trust is also named. Unless otherwise noted, a reference to Swenson is meant to cover all capacities.

2. Unless otherwise noted, all references to sections are to Title 11 of the United States Code.

3. Williams has filed four lists of creditors holding unsecured non-priority claims

the outcome of the state court appeals. He also filed an adversary proceeding against Swenson, on the ground that the liens created by the abstracts were preferential transfers, and a motion to remove the liens on his home under § 522(f). The adversary proceeding is pending and the § 522(f) motion is delayed until other issues can be resolved.

In deciding to convert this case from Chapter 13 to Chapter 7, the Court used the debtor's schedules in which he listed the Swenson obligation as unsecured, relying on *In re Slack*, 187 F.3d 1070 (9th Cir.1999) and *In re Scovis*, 249 F.3d 975 (9th Cir.2001). As part of the ruling, the Court found that the Swenson claims were liquidated and not contingent. However, the decision that they should be considered unsecured was limited to the motion to convert, as it was based solely on the schedules filed by Williams. No determination has been made as to whether the Swenson claims are disputed, since this is not an element of eligibility under § 109(e).

### III. WHETHER THIS COURT HAS AUTHORITY TO TEMPORARILY ALLOW SWENSON'S CLAIMS FOR PURPOSES OF VOTING IN A § 702 ELECTION

Swenson cites the case of *In re Cohoes Industrial Terminal, Inc.*, 90 B.R. 67 (D.C.N.Y.1988) to support her argument that, although this Court has not resolved Debtor's objections to her claims, the claims should be temporarily allowed for the purpose of voting at the trustee election. Moreover, Swenson argues that pursuant to that same case, a claim which is partially allowed but as to which an appeal is pending should be considered undisputed.

The *Cohoes* case was decided before the 1991 amendments to the Federal Rules of Bankruptcy Procedure expressly deleted the portion of Rule 2003(b)(3)[4] which authorized a court to temporarily allow a claim for the purpose of voting in a disputed election.[5] To the extent that *Cohoes* relies on Rule 2003(b)(3), it is irrelevant and misleading to cite it. Yet, this is the only case cited by Swenson in support of her motion. She fails to mention a contrary California case of *In re San Diego Symphony Orchestra Ass'n*, 201 B.R. 978 (Bankr.S.D.Cal.1996).

In *Cohoes*, the District Court based its holding on the existence of the estimation procedure of Rule 2003(b)(3), stating that "[b]ecause B.R. 2003(b)(3) contemplates that the holder of a claim disputed as to amount or allowability may vote for a trustee, it conflicts with the narrow interpretation of Code § 702(a)(1) urged by Mr.

(Schedule F). All except that of June 6, 2001 added new creditors to the case. Swenson had been included individually and as Trustee on the May 14, 2001 filing, but Williams had not indicated that she was disputed in her individual capacity. When he filed an Amended Schedule F on June 6, 2001, he included Swenson in her individual capacity and noted her claim was disputed as well as contingent, unliquidated, and subject to set-off.

4. Unless otherwise noted, all references to "Rule" are to the Federal Rules of Bankruptcy Procedure.

5. The former Bankruptcy Rule 2003(b)(3) included the following provision: "Notwithstanding objection to the amount or allowability of a claim for the purpose of voting, the court may, after such notice and hearing as it may direct, temporarily allow it for [that] purpose in an amount that seems proper to the court." Darrell Dunham, *Election of Chapter 7 Trustees Under the Bankruptcy Code*, 47 Clev. St. L.Rev. 371, fn. 108 (1999). This sentence in Rule 2003(b)(3) was deleted in the revisions of 1991.

Baker. **This Court concludes that Code § 702(a)(1) must be read consistently with B.R. 2003(b)(3)."** *Cohoes*, 90 B.R. at 69–70 (emphasis added). There is no reasonable basis upon which Swenson can argue that *Cohoes* is relevant after the repeal of the estimation provision in Rule 2003(b)(3). In fact, the *Cohoes* opinion must now be interpreted to mean that if a claim is disputed as to amount or allowability, that claim cannot be voted.

With the change to Rule 2003(b)(3), the Court does not even have an arguable justification to temporarily allow the Swenson claims from voting. *See San Diego Symphony, supra.*

## IV. WHETHER SWENSON'S CLAIMS ARE UNSECURED

Swenson is in the interesting position of professing to be both a secured and an unsecured creditor at the same time, for the same claims, depending on the issue. For purposes of voting for trustee, she asserts unsecured status. But in terms of treatment in any distribution, she argues that she is secured by Debtor's house and the vacant land. Swenson's secured status will depend on whether (1) her $29,306.07 judgment-lien is a preference as to the house and the vacant land, (2) her $145,972 judgment-lien is a preference as to the vacant land, (3) the trust deed to Colleen Hain is a preference/fraudulent transfer as to the house, (4) the trust deeds to Maria Callas are preferences/fraudulent transfers as to the house and the vacant land, and (5) the value of each piece of real property. Debtor is not attacking the Swenson judgment-lien on the house as a preference and therefore the only issue as to its secured nature (if the judgment is affirmed on appeal) will be whether it is avoidable under § 522(f) as impairing an exemption to

which the debtor is entitled. This will depend on the value of the house and the status of the prior liens of Hain and Callas.

■ The proper time to compute the universe of voting creditors is at the time of an election. *See San Diego Symphony*, 201 B.R. at 982, quoting *In re Aspen Marine Group, Inc.*, 189 B.R. 859, 863 (Bankr. S.D.Fla.1995). Since Swenson's secured claims will not have been avoided as of the date of the election, the Court relies on the secured proofs of claim filed by Swenson and her recorded abstracts of judgment which make her ineligible to vote.

## V. WHETHER SWENSON'S CLAIMS ARE ALLOWABLE

Section 702(a)(1) states that only creditors who hold "allowable" claims may vote.[6] To the extent that Swenson asserts that her secured claims are subject to divestment as preferences and therefore could be deemed unsecured, they are not allowable. *In re Centennial Textiles, Inc.*, 209 B.R. 31, 33 (Bankr.S.D.N.Y.1997). If Swenson were to win in the preference action (Adv. No. SV01–01669), her claims would be secured and she could not vote. Even under her misguided theory that the Court can estimate her claims, if the Court determined that she would lose the preference action and her claims become unsecured, they are not allowable.

Section 502(d) requires a transferee of property where the transfer is avoidable under § 547 (preferences) to turn over the property or the claim is disallowed. Accordingly, as of the date of the election, Swenson would have had to (Chapter 7) or will have to (Chapter 11) release these liens or her claims are not allowable and she cannot vote.

---

**6.** *See In re Michelex Limited,* 195 B.R. 993 (Bankr.W.D.Mich.1996) for discussion of the difference between an "allowed" claim and an "allowable" claim.

## VI. WHETHER SWENSON'S INTEREST IS MATERIALLY ADVERSE TO OTHER UNSECURED CREDITORS

■ Section 702(a)(2) disqualifies a creditor from voting if that creditor has an interest which is materially adverse to the interest of other creditors entitled to distribution under the sections enumerated in § 702(a)(1). While Swenson relies on *Cohoes* for claims estimation, she ignores its discussion of the relationship of a preference to § 702(a)(2). *Cohoes*, 90 B.R. at 70, citing *In re Lang Cartage Corp.*, 20 B.R. 534 (Bankr.E.D.Wis.1982). When a party has received a preference which is beyond a mere suspicion and in a dollar amount which is more than minimal, she has an interest materially adverse to that of other creditors who have not received preferences. *See In the Matter of NNLC Corp.*, 96 B.R. 7 (Bankr.D.Conn.1989).

Three of Swenson's four abstracts of judgment were recorded within the 90 day pre-filing preference period. This creates more than a mere suspicion. In *NNLC*, there was over $3 million in unsecured debt and the alleged preference was under $21,000. That Court held that the relation to total claims is irrelevant and the preference was a material adverse interest. Here the smaller Swenson abstract is in an amount of over $29,000. Therefore the interest is material.

There are strong policy reasons for careful enforcement of § 702(a)(2). The trustee is the representative of the estate and has the duty to make sure that all similarly situated creditors are treated alike. For that reason, the Bankruptcy Code arms the trustee with powers to set aside preferences and fraudulent transfers and to object to claims, among other responsibilities. The trustee is required to investigate claims and analyze whether they are disputed. The trustee must decide whether a secured claim is entitled to that status or whether allowing such a distribution would be unfair to unsecured creditors under the Bankruptcy Code. The Trustee will become the plaintiff in the pending adversary complaint against Swenson.

Because of this, the creditor who holds a potential preference and is allowed to select the trustee has a strong self-interest in electing someone who will not challenge her secured claim. Similarly, any creditor with a disputed claim would love to select her future opponent. It is this conflict of interest which § 702(a)(2) seeks to prevent.

By virtue of her probable preferential transfer, Swenson holds an interest which is materially adverse to other creditors who did not receive preferences. Thus, she does not qualify under § 702(a)(2).

## VII. WHETHER SWENSON'S CLAIMS ARE UNDISPUTED

■ To vote in a § 702/1104(b) election, Swenson's claims must be undisputed. The Bankruptcy Court in *San Diego Symphony, supra*, noted two lines of cases concerning the method to be used in determining this: (1) the Court should consider only filed writings or claims [*In re Lake States Commodities, Inc.*, 173 B.R. 642 (Bankr.N.D.Ill.1994)] and (2) the Court should review the debtors' schedules as modified by filed proofs of claim [*In re Michelex Ltd.*, 195 B.R. 993 (Bankr.W.D.Mich.1996)]. *See San Diego Symphony*, 201 B.R. at 981. The second approach has been adopted by the Ninth Circuit Bankruptcy Appellate Panel in *In re American Eagle Mfg., Inc.*, 231 B.R. 320, 329 (9th Cir. BAP 1999).

In the case before this Court, the schedules declare that Swenson's claim is in an unknown amount and is disputed and unsecured. The two proofs of claim, on the other hand, attach copies of writs of abstract referring to the judgments, assert

specific amounts owing, and state that they are secured.

The Court has found no cases on point as to whether a claim based on a judgment on appeal is "undisputed" under § 702(a)(1). *San Diego Symphony* concerned future wage claims, which had not yet been litigated. Seeking a test, Judge Bowie noted that § 303(b)(1) [which defines who can be a petitioning creditor in an involuntary bankruptcy] requires that the party hold a claim which is not subject to a "bona fide dispute" and that § 702(a)(1) leaves out the modifying phrase "bona fide." "The Congress knows how to modify 'dispute' with the requirement of 'bona fide' when it chooses . . . . This Court concludes that the test is no more than the bona fide dispute assessment of § 303(b), and it may well be even less than that." *San Diego Symphony*, 201 B.R. at 983.

■ In the Ninth Circuit, the test for a "bona fide dispute" is that the Court "determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1064 (9th Cir.2002), citing and adopting *In re Busick*, 831 F.2d 745, 750 (7th Cir.1987). When a pre-petition judgment has been obtained, should the bankruptcy court determine the viability of the appeal? Not for purposes of § 303. *In re Drexler*, 56 B.R. 960 (Bankr.S.D.N.Y.1986) has been widely cited for the proposition that "a claim based upon an unstayed judgment to which an appeal has been taken by the debtor is not the subject of a bona fide dispute" under § 303. *Id.* at 967.

Swenson urges this Court to apply that proposition to § 702. But the difference in language and application between §§ 303

and 702 requires a different ruling. A petitioning creditor files an involuntary petition in an effort to collect on its claim. This is part of the enforcement action available to anyone who has enforcement rights under state or federal law. On an unstayed appeal, the creditor may execute on the judgment. Since "[t]he filing of an involuntary petition is but one of many means by which a judgment creditor may seek to attempt collection of something upon its judgment," there is no reason to disqualify the judgment creditor from using this tool when there is no bar to other enforcement methods. *Id.*

But the choice of a trustee is a different matter when the judgment is on appeal—whether collection is stayed or not. The trustee may become the real party in interest and be required to prosecute, settle or dismiss the appeal. To the extent that there is a potential impact on the estate, the trustee must determine whether to prosecute, abandon, sell or settle the case. To allow the other party to the lawsuit to select the trustee would put her in an enviable but unjust position. The law does not sanction having Swenson choose her opponent on appeal any more than it allows her to select debtor's attorney. This is a very real distinction between the application of what is determined to be a claim subject to a "bona fide dispute" under § 303 and an "undisputed claim" in § 702. Therefore the test of § 702(a)(1) must be different from that of § 303(b)(1) as it is applied to claims based on judgments on appeal [7].

Even on pre-judgment claims, the test of "disputed" differs in §§ 702 and 303. The unique situation of election of a trustee requires a different test from filing an involuntary petition for at least two reasons. First, the trustee will "own" the

---

**7.** Williams asserts that the second judgment is stayed under state law as it is for attorney's fees. The Court need not reach this issue due to the holding set forth herein.

debtor's rights in the dispute and the creditor should not be in a position to choose her opponent.

In the second place, the timing of the § 341(a) meeting—at which the election takes place—requires that the determination of the existence of a dispute be a "quick and dirty" procedure. The meeting is set for no fewer than 20 and no more than 40 days after the order for relief. Rule 2003(a). The election takes place at the meeting. § 702(b). If there is an objection to the proof of claim or an issue of whether the claim is insufficient on its face, the determination of a permanent trustee will be delayed until the court can resolve the dispute. Rule 2003(b)(3). Any substantial delay in appointing a permanent trustee could be detrimental to the case or the debtor, as the administration of the case effectively stops until the identity of the permanent trustee is determined. While an interim trustee is not barred from administering the estate, it would be unusual for him to actively do so while his status is in question. However, any prudent interim trustee would seek an extension to file a complaint objecting to discharge under § 727, lest the 60 day statute of limitations expires before his status is determined. Rule 4004. This would delay the entry of debtor's discharge and fresh start.

■ "[A] trustee election dispute requires a bankruptcy court to balance the need for an accurate resolution of fact-based questions at the initial stage of a case with the need for a speedy resolution of the dispute, and ... it is both undesirable and unworkable to turn a trustee election into a full scale trial." *American Eagle Mfg., Inc.*, 231 B.R. 320, 330–1 (9th Cir. BAP 1999), citing *In re Tartan Const. Co.*, 4 B.R. 655, 658 (Bankr.D.Neb.1980).[8]

The court must make a quick determination, erring on the side of the welfare of the estate and all creditors. This calls for a balancing of the issues. If the dispute is easy to resolve, complete resolution is appropriate. If, as in this case, the matter is complex or the court would normally defer to the ruling of the state appellate court, the test should be whether the debtor's objection to the claim is frivolous.

Using a test of whether the debtor's objection to the claim is frivolous applies a lower standard under § 702 than that of § 303, which is justified by the process and issues laid out in deciding controverted involuntary filings. Entering an order for relief in an involuntary case requires the Court to find the qualification of the petitioning creditors, the number of creditors, and whether the debtor is generally not paying its debts as they come due. This often leads to massive discovery and trial. During the delay, the alleged debtor continues to operate as if no bankruptcy existed. There are substantial potential sanctions to which a bad faith petitioning creditor can be subject. These issues and safeguards do not exist in election of a trustee.

The facts presented to the Court concerning the Swenson claims are as follows:

Debtor asserts that he entered into a binding contract to purchase a house from Swenson, there were various counter-offers and eventually an escrow was opened, there were also other open escrows on the property, and he put the down payment into the escrow but Swenson failed to perform. Debtor filed a Superior Court case

8. "The authorities unanimously agree that a 'mini-trial' to determine if a claim is 'disputed' would unduly delay the administration of the estate at the initiation of the case. However, the bankruptcy court should undertake some examination to determine whether the claimant is entitled to vote." Dunham, 47 Clev.St.L.Rev. at 388.

seeking specific performance and Swenson demanded arbitration. Debtor alleges that there was no jurisdiction for the arbitration since Swenson never agreed to arbitration as part of the original offer and Debtor withdrew his agreement to arbitration in later documents. Nonetheless the arbitration took place and Swenson was deemed to be the prevailing party. The first judgment is for attorney's fees to Swenson as the prevailing party in the arbitration. Debtor claims that there was no provision in the final documents that would allow these fees. The second judgment is for fees to Swenson as the prevailing party in the Superior Court action to confirm the first award. Debtor also claims that there was no legal basis for these fees. He also attacks the amount of the award of fees as unreasonable. Should Debtor be successful as to either the jurisdiction for the arbitration or the basis and amount of fees, the judgments would be vacated or the amounts changed.

According to Swenson's response, Debtor cannot prevail on appeal. As to the validity of the arbitration, Swenson states that the Los Angeles Superior Court has twice granted Motions to Compel Arbitration, has order the consolidation of two arbitrations, and has confirmed the arbitration award.

In this case, the fact that the Superior Court has consistently ruled against the Debtor is not sufficient for me to find that the appeal is frivolous.[9] The outcome of the issues on appeal is sufficiently uncertain that the trustee must exercise discretion in deciding how to proceed. Therefore, for purposes of an election, the Swenson claims are disputed.

9. Swenson argues that Debtor's delay in proceeding with the appeals post-filing is evidence of his weak case. Debtor proposed Chapter 13 plan would have paid 0% to unse-

## VIII. CONCLUSION

Determining the status of the Swenson claims as of the § 341(a) meeting in Chapter 7 and as of the time of this hearing, Swenson holds a disputed claim, which is either secured or not allowable pursuant to § 502(c). She also holds an interest which is materially adverse to other creditors denominated in § 702(a)(1). Therefore she is not in the universe of those who can call an election or vote in one.

The motion is denied.

cured creditors. Thus, if he could strip the lien from his home through his motion under § 522(f), he would have no incentive to proceed with the appeals.